Mrs. Lynn E. BONNIWELL, et al., Petitioners,

v.

BEECH AIRCRAFT CORPORATION, Respondent.

No. C–1233.

Supreme Court of Texas.

Jan. 4, 1984.

Rehearing Denied Feb. 22, 1984.

Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, W. James Kronzer, Ful-

bright & Jaworski, L.S. Carsey, Houston, for petitioners.

Reynolds, Allen & Cook, Stanley B. Binion and James L. Reed, Houston, for respondent.

## ON MOTION FOR REHEARING

RAY, Justice.

We grant the petitioners' motion for rehearing. Our former opinion and judgment of March 9, 1983, are withdrawn and the following opinion is substituted.

This is an appeal from one of five lawsuits arising from an airplane crash. At issue is the applicability of the related doctrines of res judicata and collateral estoppel. The trial court rendered summary judgment on the basis that a judgment rendered in a prior suit involving the same defendants was res judicata of the co-defendants' cross-actions for contribution and indemnity. The court of appeals affirmed. 633 S.W.2d 553. Finding error in part of the court of appeals' judgment, we reverse and remand in part and affirm the remainder.

## FACTS

On April 30, 1974, a Metroflight airplane crashed in Galveston County shortly after take-off. The crash occurred because the aileron and elevator controls were locked in a fixed position by a pin left in the control column at the time of take-off. Metroflight, Inc. (Metro), the operator of the airplane, had purchased it from Shawnee Airlines, Inc. (Shawnee), the original owner. Beech Aircraft Corporation (Beech) had manufactured the airplane.

Five lawsuits were filed in connection with the accident. The prior judgment considered to be res judicata of the defendants' cross-actions in this case was rendered in *Wilcox v. Metroflight, Inc.* No appeal was taken from that judgment. In both the present case and the *Wilcox* case, Metro, Shawnee and Beech were joined as defendants under claims for wrongful death and personal injury. Metro and Shawnee were sued under a negligence theory. Beech was sued under theories of negligence and strict liability. In both suits, each defendant filed cross-actions for indemnity or contribution against the other defendants. In the *Wilcox* case, the plaintiffs settled with Metro prior to trial, and took a nonsuit. Metro then nonsuited Beech on Metro's cross-claim, but remained a party because of Beech's and Shawnee's cross-actions against it.

The *Wilcox* jury found Metro and Shawnee negligent, and this negligence was further found to be a proximate cause of the *Wilcox* plaintiffs' injuries. The jury failed to find Beech either negligent or responsible for a design defect in the control lock system. In response to a special issue requesting the jury to determine the comparative negligence of the defendants, the jury apportioned 75% of the fault to Metro's negligence and 25% of the fault to Shawnee's negligence. In conformity with their earlier findings in Beech's favor, the jury apportioned no fault to Beech. Based upon the jury's verdict, the trial court rendered judgment against Shawnee for 25% of the plaintiffs' damages. The *Wilcox* judgment also recited that all plaintiffs had settled with and released all claims against Metro. Since Beech had not been found liable, the judgment denied Beech's cross-action against Metro for contribution or indemnity.

The case from which this appeal arises, "*Bonniwell*," was to be tried next. Prior to trial, Beech moved for summary judgment on its cross-action against Metro and Shawnee and on Metro's cross-action against Beech. Beech asserted the *Wilcox* case had determined issues identical to *Bonniwell* with respect to the defendants' cross-actions, and therefore precluded relitigation of those issues. Beech's motion for summary judgment was granted and judgment was rendered awarding Beech indemnity from Metro and Shawnee in the event Beech was found liable to the Bonniwells. The summary judgment also denied Metro and Shawnee any relief under their respective cross-actions against Beech.

Metro and the Bonniwells brought this appeal in which Shawnee did not participate. Although the summary judgment adjudicates rights only among the defendants on their respective cross-actions, the Bonniwells, the plaintiffs in the present suit, are parties to this appeal because of a stipulation agreement. The stipulation recognizes the validity of a settlement agreement entered into by the Bonniwells with Metro and also provides that the Bonniwells will be bound by the summary judgment if affirmed on appeal.

## BEECH'S CROSS–ACTION FOR INDEMNITY

The court of appeals has affirmed the summary judgment granting Beech's cross-action for indemnity against Metro and Shawnee and denying Metro's cross-action for indemnity or contribution. The court has held that the judgment in *Wilcox* is res judicata as to Beech's and Metro's cross-claims against each other in the present suit.

■ Res judicata is frequently characterized as claim preclusion because it bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in the prior suit. *Russell v. Moeling,* 526 S.W.2d 533, 536 (Tex.1975). When a prior judgment is offered in a subsequent suit in which there is identity of parties, issues and subject matter, such judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action on the theory that they have merged into the judgment. *Texas Water Rights Com'n v. Crow Iron Works,* 582 S.W.2d 768, 771 (Tex.1979); *Abbott Laboratories v. Gravis,* 470 S.W.2d 639, 642 (Tex.1971).

■ The prior judgment in *Wilcox,* however, denied Beech's indemnity claim. Although the court of appeals in our present case speaks in terms of res judicata and refers to the judgment in *Wilcox,* the court actually applies principles of collateral estoppel in affirming the award of indemnity to Beech. Collateral estoppel is narrower than res judicata. It is frequently charac-

terized as issue preclusion because it bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action. *Wilhite v. Adams,* 640 S.W.2d 875, 876 (Tex.1982); *Benson v. Wanda Petroleum Company,* 468 S.W.2d 361, 362 (Tex.1971). Under principles of collateral estoppel the court of appeals reasons that Beech and Metro have fully litigated their relative liability and that the findings of the *Wilcox* jury are binding on the cross parties in all subsequent litigation arising out of the accident. The court of appeals concludes that Beech is entitled to indemnity in this case because Beech was absolved of all liability in *Wilcox.*

■ We, however, have found no issue in *Wilcox* supporting Beech's claim to indemnity. The mere fact that the *Wilcox* plaintiffs did not obtain findings that Beech was either negligent or strictly liable does not establish Beech's right to indemnity. Furthermore, the judgment in *Wilcox* denied Beech's cross-claim for indemnity and contribution. The only issues pertaining to Beech which were essential to the *Wilcox* judgment were findings that Beech was neither negligent nor strictly liable. Since Beech was not found negligent, there was no reason to include Beech in the comparative negligence issue. The comparative negligence issue relates solely to the cross-actions for contribution. Contribution is available only to a joint tortfeasor. Since Beech was found not to be a joint tortfeasor, no purpose was served by including Beech in the comparative negligence issue.

A party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Benson v. Wanda Petroleum Company,* 468 S.W.2d 361; *Restatement (Second) of Judgments* § 27 (1982). We conclude that principles of collateral estop-

pel do not support Beech's claim for indemnity, because the issue comparing Beech's negligence vis-a-vis Metro and Shawnee was not essential to the judgment rendered in *Wilcox.*

## THE BONNIWELLS' CAUSE OF ACTION

■ The Bonniwells have settled with Metro and have agreed to indemnify Metro from any further liability. An award of indemnity to Beech in the present suit would therefore operate directly against the Bonniwells and eliminate their cause of action against Beech. This is because any judgment the Bonniwells obtain against Beech will be collected from Metro who in turn must be reimbursed by the Bonniwells.

In *Benson v. Wanda Petroleum Company,* 468 S.W.2d 361, 363 (Tex.1971) we said that "[d]ue process requires the rule of collateral estoppel operate only against persons who have had their day in court either as a party to the prior suit or as a privy . . . ." The Bonniwells have not had their day in court against Beech, nor are they in privity with any party who actually litigated the comparative negligence issue in *Wilcox.*

The only parties who actually had an interest in litigating the comparative negligence issue were the *Wilcox* plaintiffs, and defendants, Beech and Shawnee. Although Metro remained a party in *Wilcox* for purposes of contribution under Art. 2212a, Metro had no reason to litigate its comparative negligence because it had obtained a contractual right to indemnity through its settlement with the *Wilcox* plaintiffs.

The Bonniwells were not represented in *Wilcox.* They were not in privity with any party who actually litigated the comparative negligence issue, nor were they in privity with Metro, who in any event had no reason to litigate the issue. The mere fact that the *Wilcox* plaintiffs did not obtain findings that Beech was either negligent or strictly liable does not establish Beech's right to indemnity and should not operate to foreclose the Bonniwell's cause of action against Beech.

## METRO'S CROSS-ACTION FOR INDEMNITY OR CONTRIBUTION

The court of appeals has also affirmed that part of the summary judgment denying Metro's cross-action for contribution or indemnity. This part of the summary judgment is correct because Metro has no right to indemnity or contribution as a matter of law.

■ At the time the summary judgment was rendered, a joint tortfeasor's right to contribution was a purely statutory right. *Lubbock Manufacturing Co. v. Perez,* 591 S.W.2d 907, 922 (Tex.Civ.App.—Waco 1979, no writ); TEX.REV.CIV.STAT.ANN. arts. 2212 and 2212a. Neither article 2212 nor article 2212a provides any right of contribution to a joint tortfeasor who has settled the plaintiff's claim. Contribution is no longer a purely statutory right. In *Duncan v. Cessna Aircraft Company,* 26 Tex.Sup. Ct.J. 507 (July 16, 1983), we recognized a prospective, common law right to contribution between negligent and strictly liable joint tortfeasors. Although we approved contribution by comparative causation in *Duncan,* we did not extend the right of contribution to a settling party. The settlement agreement which released Metro from all liability extinguished Metro's right to contribution.

Metro also has no right to indemnity at common law. Article 2212a has abolished the common law doctrine of indemnity between negligent joint tortfeasors. *Cypress Creek Utility Service Co. v. Muller,* 640 S.W.2d 860, 864 (Tex.1982); *B & B Auto Supply v. Central Freight Lines, Inc.,* 603 S.W.2d 814, 816–17 (Tex.1980). In *Duncan,* we likewise impliedly abolished the common law doctrine of indemnity between joint tortfeasors in strict liability cases.

■ Only a vestige of common law indemnity remains. In *B & B Auto Supply,* we recognized the survival of common law indemnity with respect to liability of a purely vicarious nature. An analogous indemnity right survives in products liability cases to protect the *innocent* retailer in the chain of distribution. This is all that re-

mains of the common law doctrine of indemnity. Metro has no right to indemnity at common law regardless of whether Beech is found negligent or strictly liable.

In summary, we hold that Metro has no right to contribution or indemnity as a matter of law. We further hold the issues decided in *Wilcox* do not establish that Beech is entitled to indemnity from Metro. The portion of the summary judgment awarding Beech indemnity against Metro is reversed and that part of the cause is remanded to the trial court for further proceedings by the Bonniwells against Beech. The remainder of the summary judgment is affirmed.

Dissenting opinion by McGEE, J., in which BARROW and KILGARLIN, JJ., join.

McGEE, Justice, dissenting.

I dissent.

The Bonniwells' standing to appeal this judgment arises from their stipulation that if the summary judgment is affirmed on appeal, they are bound by the settlement agreement they entered into with Metro. That settlement agreement provides that as part of the consideration for the payment of the sum of $450,000, the wife and children of Charles E. Bonniwell, III, deceased, "... do hereby indemnify and hold harmless Metroflight, Inc., from any and all claims, demands, actions and causes of action of whatsoever nature or character, which have been or hereafter may be asserted by any person, firm or corporation who is or shall be named as a defendant by us in any lawsuit arising out of the above described accident...."

The effect of affirming the summary judgment in question is to virtually eliminate the Bonniwells' cause of action against Beech. This is because, even if Beech were found liable to the Bonniwells in a trial of their case against Beech, the summary judgment granting Beech complete indemnity over and against Metro would require Metro to pay those damages to the Bonniwells. They in turn have indemnified Met-

ro pursuant to their settlement agreement. The Bonniwells' cause of action is thus destroyed because they would end up only where they started. However, the *effect* of affirmance on the Bonniwells is not the issue before this court and should not determine the court's decision. The Bonniwells entered into the agreement for a valuable consideration and their decision to do so was in no way influenced by any actions of Beech. Therefore, Beech's rights against Metro should not be compromised because of this settlement. The issue in this case is whether the relative fault findings of the jury in the *Wilcox* suit are binding on the same three defendants in the instant (*Bonniwell*) suit.

Metro asserts the lower courts erred in applying collateral estoppel to the cross-claims asserted by the defendants in this second suit for several reasons. First, Metro claims the jury findings in *Wilcox* were not essential to adjudication of the relative liabilities of the defendants in that suit. Second, Metro asserts it cannot be precluded from litigating its own cross-action against Beech because that claim was not fully litigated in the *Wilcox* suit since Metro nonsuited Beech on that claim. Finally, Metro contends Beech is not entitled to a prospective award of indemnity in this case because there is no common-law or statutory basis for such an award. In order to reach the merits of these issues, it is necessary to discuss the doctrine of collateral estoppel.

## COLLATERAL ESTOPPEL

Collateral estoppel, or issue preclusion, bars relitigation of issues actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action. A party seeking to invoke the doctrine must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as

adversaries in the first action.[1] *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 362 (Tex.1971); *Restatement (Second) of Judgments* § 27 (1982). A fourth aspect of the doctrine, which has been abrogated in recent years, is the requirement of mutuality. Texas courts have adopted the position that mutuality is required only as to the party against whom the plea of collateral estoppel is asserted. *Windmill Dinner Theatre of Dallas v. Hagler,* 582 S.W.2d 585, 586 (Tex.Civ.App.—Dallas 1979, writ dism'd w.o.j.); *Olivarez v. Broadway Hardware, Inc.,* 564 S.W.2d 195, 200 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Hardy v. Fleming,* 553 S.W.2d 790, 792 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). When the persons against whom collateral estoppel operates have had their day in court, either as parties, privies, or through actual and adequate representation, application of the doctrine meets the requirements of due process. *Benson v. Wanda Petroleum Co.,* 468 S.W.2d at 363.

Application of the doctrine of collateral estoppel is appropriate where the derivative claims of identical parties are based upon issues identical to those litigated in a prior suit. As stated in *Houston Terminal Land Co. v. Westergreen,* 119 Tex. 204, 27 S.W.2d 526 (1930):

> It is not our purpose to hold or to support a view, sometimes contended for, that whenever in an action a party thereto might have pleaded a certain particular ground of recovery or of defense, but did not, he is precluded from setting up same in a subsequent suit between the same parties upon a different cause of action. But we do hold, in keeping, we think, with the well-established rule, that where an issue of fact is made in a suit which becomes necessary to and upon which the determination of the issues in that suit turned and rested, upon the establishment thereof by evidence in a subsequent suit between the same parties upon a different cause of action, such determination of the issue and the judgment based thereon in such former suit create an estoppel by judgment against the determination again of the self-same issue. [citations omitted].

*Id.* 27 S.W.2d at 528.

The present appeal by Metro from the award of summary judgment to Beech involves the claim for an apportionment of comparative fault between the three defendants, e.g., the horizontal suit between Beech, Metro, and Shawnee. It does not concern the primary tort claim brought by the Bonniwells against the three defendants, the vertical suit. The second horizontal lawsuit in Bonniwell, *vis-a-vis* the three defendants, is based upon the same factual issues (the crash and responsibility therefor), the same issues (comparative liability) and is between the same parties. Therefore, the doctrine of collateral estoppel precludes relitigation of the comparative fault issue as between the same defendants. Inasmuch as this appeal is by Metro and concerns only the cross-actions involving it and Beech, the court of appeals was correct in holding that Beech was entitled to assert collateral estoppel to preclude further relitigation of the original horizontal claim by the three co-defendants for comparative fault. Metro, Beech, and Shawnee are now barred from relitigating the issue as to who was to blame for the crash.

Metro argues that collateral estoppel cannot be applied to utilize the comparative fault findings of the *Wilcox* suit in the instant suit because they were not essential to the judgment denying Beech indemnity in *Wilcox*. Metro asserts that since Beech was exonerated and Metro nonsuited Beech

---

1. Although collateral estoppel generally is invoked as between plaintiff and defendant, it is equally applicable between co-defendants who are cast as adversaries as a result of cross-claims against each other. Section 38 of the *Second Restatement of Judgments* states:

    Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly as adversaries to each other and which are essential to the judgment rendered.

    *Restatement (Second) of Judgments* § 38 (1982).

in the *Wilcox* suit, the defendants' mutual liabilities were not actually litigated among them. These contentions are without merit.

The *Wilcox* jury apportioned fault for the crash among Metro, Beech, and Shawnee. What Metro fails to realize is that the trial court, in its judgment in *Wilcox,* made a determination with respect to *all* issues and causes of action before it and not only the causes of action asserted by the *Wilcox* plaintiffs. Metro's cross-action against Beech for contribution or indemnity in this case is dependent upon identical issues of negligence and design defect which were adjudicated in the *Wilcox* suit and upon which the defendants' relative liabilities were established.[2] Although the *Wilcox* judgment denied Beech's cross-action, that judgment is conclusive as to every question put in issue by the parties and passed upon by the court in arriving at the judgment. *Houston Terminal Land Co. v. Westergreen,* 27 S.W.2d at 527–28; *Hanrick v. Gurley,* 93 Tex. 458, 56 S.W. 330, 330 (1900).

Any judgment granting or denying indemnity or contribution, such as that in the *Wilcox* suit, is necessarily dependent upon adjudication of liabilities. Where defendants have established adversity by opposing each other in a cross-claim, a judgment between them establishes their rights as to each other. 1 Freeman, The Law of Judgments §§ 422–25 (5th ed. 1925); *see generally* Vestal, *Preclusion/Res Judicata Variables: Parties,* 50 Iowa L.Rev. 27, 27–37 (1964). The *Wilcox* judgment denying Beech's claim for indemnity was premised upon the jury's failure to find Beech negligent or responsible for a design defect as well as the affirmative finding that Beech incurred no percentage of comparative fault as between the three defendants. Determination of these facts was a necessary step in arriving at the final judgment and conclusively established that as between the

three defendants, Beech was not liable for any percentage of damages.

"A right, question, or fact distinctly put in issue and directly determined as a ground of recovery by a court of competent jurisdiction collaterally estops a party or his privy from relitigating the issue in a subsequent suit." *Hardy v. Johns-Manville Sales Corp.,* 681 F.2d 334, 338 (5th Cir.1982); *accord Houston Terminal Land Co. v. Westergreen,* 119 Tex. 204, 27 S.W.2d 526, 528 (1930); *see also Restatement (Second) of Judgments* § 27 (1982). Since the relative liabilities were ascertained in the first suit, Beech, Metro, and Shawnee are hereafter estopped to relitigate those fixed liabilities between themselves in subsequent suits arising from the airplane crash.

Due to the initial settlement between Wilcox and Metro, it was incumbent upon Wilcox to show liability as to Shawnee and Beech and to maximize the percentage of fault to them, as this would maximize their recovery—the larger percentage of fault assigned to Metro because of the settlement, the smaller overall resulting award to Wilcox. In this respect, Wilcox stood in the shoes of Metro—it wished to establish culpability and total percentage negligence on the part of Shawnee and Beech. Likewise, Shawnee and Beech wished to establish the culpability of the other plus that of Metro, in order to escape or minimize liability. For these reasons it is clear that the issue of comparative fault of the parties was fully and fairly litigated.

This case is clearly distinguishable from *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971), relied upon extensively by the majority opinion. The *Wanda* case holds only that due process will not allow collateral estoppel to operate against a person who was not a party to the prior action. In the case at bar, no one contends that collateral estoppel should op-

---

**2.** *See* Vestal, *Preclusion/Res Judicata Variables: Parties,* 50 Iowa L.Rev. 27 (1964), wherein Professor Vestal notes:

In the case of derivative suits for contribution or indemnification, the issues concerning liability of the defendants to the plaintiff have been considered and decided. The is-

sues in the derivative suit are identical; the opportunity to litigate was present, along with the incentive. Relitigation would seem to be unnecessary and contrary to the best interest of society.

*Id.* at 36.

erate against the Bonniwells, who were not present in the *Wilcox* litigation. Collateral estoppel should operate only upon Metro, Beech, and Shawnee, who were all parties to the *Wilcox* suit, so as to prevent them from relitigating their horizontal lawsuits against each other.

In the case at bar, it is not prior litigation or the doctrine of collateral estoppel that determines the Bonniwells' rights. Those rights are determined by the settlement contract voluntarily made by the Bonniwells for valuable consideration. Their decision to enter this agreement was in no way influenced by Beech. That decision cannot justly be given the effect of denying to Beech the benefits of its successful litigation of its rights against Metro and Shawnee. Nor should that agreement of the parties be permitted to obstruct the operation of the legal doctrine of collateral estoppel.

### INDEMNITY

Metro also contends that Beech cannot recover indemnity over and against Metro because there is no statutory or common-law basis for such award, and because indemnity cannot be awarded prospectively. These contentions must be considered in light of our holding that these defendants are precluded from relitigating their relative liabilities to each other. I agree with the court of appeals that neither Article 2212 nor Article 2212a, TEX.REV.CIV. STAT.ANN., applies to the instant case because Beech was not found to be a tortfeasor in the *Wilcox* suit. 633 S.W.2d at 561. The issue then is whether Beech is entitled to any form of common-law indemnity should it be found to be a tortfeasor in subsequent suits arising out of the airplane crash against these defendants.

In *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex.1977), we noted several approaches to determination of indemnity and observed, "[I]t is perhaps not possible to state a single all-inclusive one, since the variety of duties and situations is great." *Id.* at 859–60. Most frequently, common-law indemnity was grounded in different qualities of negligence, *e.g., Wheeler v. Glazer,* 137 Tex. 341, 153 S.W.2d 449 (1941), breach of duty between tortfeasors, *e.g., Austin Road Co. v. Pope,* 147 Tex. 430, 216 S.W.2d 563 (1949), or vicarious liability, *e.g., City of San Antonio v. Smith,* 94 Tex. 266, 59 S.W. 1109 (1900). There are other situations, however, where indemnity is allowed under circumstances which do not fit neatly into these categories. This is because the underlying basis for indemnity is unjust enrichment and the idea that indemnity should be allowed in favor of a person who has been compelled to pay for another's wrong.

Section 886B(1) of the *Second Restatement of Torts* states:

> If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

*Restatement (Second) of Torts* § 886B(1), comment (c) (1977); *see* Leflar, *Contribution and Indemnity Between Negligent Tortfeasors,* 81 U.Pa.L.Rev. 130, 146–47 (1932); *see also Restatement of Restitution* § 76 (1936).

Beech does not contend the Bonniwells have no cause of action against it as a result of Beech's exoneration in the *Wilcox* suit. Beech does contend, however, that should the Bonniwells obtain a finding Beech was negligent or strictly liable, Beech would be entitled to full indemnity over and against Metro because of the prior adjudication of the defendants' relative liabilities. I agree.

I find the instant case closely analogous to those cases involving vicarious liability, wherein a defendant without fault may be held liable to a plaintiff, and a second de-

fendant is the true wrongdoer. *Cf.* Hodges, *Contribution and Indemnity Among Tortfeasors,* 26 Tex.L.Rev. 150, 153–54 (1947). Section 76 of the *Restatement of Restitution* states:

> A person, who in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

*Restatement of Restitution* § 76 and § 86, comment (a) (1936). Should Beech be adjudged a tortfeasor in this suit, it would be bound to discharge its liability to the Bonniwells. As between Beech and Metro, however, this liability should be discharged by Metro because of the prior jury findings in *Wilcox* that Beech was without fault and Metro was liable.

### CONCLUSION

I am not unmindful of the effect an affirmance of the judgment of the court of appeals would have upon the Bonniwells' cause of action against Beech. Nonetheless, I am not persuaded there is a clear and convincing need for a new determination of the *Wilcox* defendants' mutual liabilities. Any adverse impact upon the Bonniwells ultimately stems from their settlement agreement with Metro, the terms of which were voluntarily negotiated between the parties for valuable consideration. A settlement agreement is but one aspect of trial strategy, and does not constitute special circumstances which would justify relitigation of defendants' relative liabilities. Nor can it be said future lawsuits involving these issues were not foreseeable, or that Metro did not have adequate opportunity or incentive to litigate these issues. The majority's holding that these same issues may again be litigated between these defendants to establish relative liabilities in a subsequent controversy would invite inconsistent adjudication contrary to the spirit and pur-

pose of the doctrine of collateral estoppel. Defendants should not be twice vexed by having to relitigate among themselves claims for contribution and indemnity based upon the identical fact issues determined in the prior suit.

I would affirm the judgment of the court of appeals.

KILGARLIN and BARROW, JJ., join in this dissent.