**Luther Frank TANKERSLEY, Appellant,**

v.

**Stephen S. DURISH, Ancillary Receiver for Transit Casualty Company, Wal–Mart Stores, Inc., Alexander & Alexander, Inc. and Alexander & Alexander of Texas, Inc., Appellees.**

No. 3–92–292–CV.

Court of Appeals of Texas, Austin.

June 2, 1993.

Rehearing Overruled July 7, 1993.

Bonnie Bratton, The Bratton Firm, Austin, for appellant.

Sarah L. Scharnberg, Cohan, Simpson, Cowlishaw, Aranza & Wulff, L.L.P., Dallas, for Alexander & Alexander, Inc. and Alexander & Alexander of Texas, Inc.

Kelly A. McDonald, Davis & Wilkerson, P.C., Austin, for Sandra A. Autry, Receiver.

Robert Neblett, III, Small, Craig & Werkenthin, Austin, for Wal–Mart Stores, Inc.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

This appeal involves the determination of the validity of workers' compensation insurance policies. Luther Frank Tankersley appeals from a district court order denying his motion for summary judgment and granting summary judgment in favor of appellees, Stephen S. Durish, ancillary receiver for Transit Casualty Company; Wal–Mart Stores, Inc.; and Alexander & Alexander, Inc. and Alexander & Alexander of Texas, Inc. (collectively "A & A"). We will affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Insurance Policies

In 1983 and 1984, Wal–Mart negotiated with Transit, a Missouri insurer, to obtain workers' compensation insurance to cover its operations in several states, including Texas. Participating in the negotiations were A & A, Wal–Mart's insurance consultant and broker, and Miro & Associates, Inc. ("Miro"), Transit's sub-agent. As a result of the negotiations, Transit issued two consecutive workers' compensation insurance policies to Wal–Mart. The policies provided for payment of statutory workers' compensation benefits to Wal–Mart employees injured during the period from February 1, 1983, through January 31, 1985.

The estimated annual premium reflected in each policy was $3,500,000. Estimated payroll figures were reflected in the policies and used to calculate the premiums. These figures, however, were significantly lower than the estimated figures submitted by Wal–Mart. Wal–Mart and A & A were aware that the figures reflected in the policies had been understated, but accepted the policies as written. The policies specifically provided that "[t]he premium stated in the declarations [$3,500,000] is an estimated premium only"; the ultimate premium to be paid would be adjusted pursuant to an audit conducted at the end of each policy year. In addition, certain endorsements provided for an increased premium if losses proved greater than expected. Miro, however, represented to Wal–Mart that the

$3,500,000 premium was a flat-rate premium that was not subject to adjustment.

After the policies were issued, Transit filed a "Form 18a" with the Texas State Board of Insurance and the Industrial Accident Board, indicating that Transit agreed to provide workers' compensation coverage to Wal–Mart's Texas employees beginning February 1, 1983.

### 2. *The Arkansas Litigation*

In 1985, problems surfaced. Claims under the policies were far in excess of the $7,000,000 in premiums collected. Transit demanded $20,000,000 in additional premium payments in accordance with rates indicated in the policies and Wal-Mart's actual payroll figures. After receiving Transit's demand, Wal–Mart filed suit in Arkansas federal district court seeking to enforce the agreement entered into with Miro. Transit counterclaimed for the additional premium, alleging that the "side agreement" with Miro was illegal and unenforceable. Wal–Mart then filed a third-party claim against A & A seeking recovery of any amount assessed against Wal–Mart pursuant to Transit's counterclaim.

In December 1985, Transit was placed into receivership. A domiciliary receiver was appointed in Missouri and was substituted into the Arkansas lawsuit in place of Transit. At the same time, an ancillary receiver was appointed in Texas to handle Transit's Texas affairs. The Texas ancillary receiver, however, was not joined in the Arkansas lawsuit.

In 1986, the Arkansas federal district court concluded that the side agreement was illegal and unenforceable and rendered judgment that Wal–Mart pay an additional $16,772,144 in premiums to Transit and that Wal–Mart take nothing by its claim against A & A. *Wal–Mart Stores, Inc. v. Crist,* 664 F.Supp. 1242 (W.D.Ark.1987), *aff'd in part and rev'd in part,* 855 F.2d 1326 (8th Cir.1988), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989). Wal–Mart appealed the judgment

awarding Transit the additional $16,772,144 premium. The Eighth Circuit concluded that the side agreement *and the policies themselves* were illegal and unenforceable and rendered judgment that both Wal–Mart and the domiciliary receiver for Transit take nothing. *Wal–Mart Stores, Inc.,* 855 F.2d 1326.

### 3. *The Texas Litigation*

There are three proceedings involved in the "Texas litigation": (1) the lawsuit at issue in this appeal filed by the Receiver against Wal–Mart and A & A in the district court of Travis County ("the present cause"); (2) an ancillary receivership proceeding involving Transit's Texas receivership estate, also filed in Travis County ("the receivership cause"); and (3) a lawsuit filed by Tankersley in Harris County against Wal–Mart and A & A.

In November 1988, the Receiver filed the present cause against Wal–Mart and A & A requesting alternative forms of relief.[1] The Receiver requested payment of the unpaid balance of the statutorily correct premium owed on the Texas portion of the policies, assuming the policies were valid. Alternatively, assuming the policies were invalid, the Receiver requested reimbursement of the sums paid by Transit, the Receiver, and the Texas Property & Casualty Insurance Guaranty Association ("Guaranty Association") on claims made under the policies. The Receiver also joined Wal–Mart's Texas employees currently receiving benefits under the policies as parties and designated all such employees, including Tankersley, as "claimants."

Ancillary receivership proceedings began in Texas when Transit was placed into receivership in December 1985, before the filing of the suit at issue in this appeal. All actions taken in connection with Transit's Texas receivership estate required approval of the receivership court. Accordingly, in 1990, the Receiver submitted to that court for approval a proposed settlement agreement for the present cause.

---

**1.** The Texas Property & Casualty Insurance Guaranty Association intervened in the present cause and participated in the proceedings; however, that association is not designated as an appellee in this appeal.

The Receiver, Wal–Mart, A & A, and the Guaranty Association were parties to the settlement agreement, but the claimants were not. On May 1, 1990, after reviewing the agreement, the receivership court rendered judgment in the receivership cause approving the settlement agreement, declaring the policies valid, and authorizing the Receiver to execute all documents necessary to effectuate the settlement in the present cause (hereinafter referred to as the "May 1990 settlement order").

In July 1989, after the ancillary receivership proceedings began and after the Receiver filed the present cause, but before the May 1990 settlement order was issued, Tankersley filed suit in a Harris County district court against Wal–Mart and A & A. Tankersley alleged that he was injured in the scope of his employment with Wal–Mart and that his injury was a proximate result of Wal–Mart's negligence. Tankersley claimed that he was entitled to pursue his common-law claims because Wal–Mart had misrepresented that it had a valid workers' compensation policy and that Wal–Mart and A & A are precluded from claiming that the policies were valid. This lawsuit has been abated pending determination of the present cause.

After the May 1990 settlement order was issued in the receivership cause, appellees filed a joint motion for summary judgment in the present cause. In response, Tankersley also filed a motion for summary judgment. The district court denied Tankersley's motion and granted that of appellees. In two points of error, Tankersley complains that the district court erred in rendering summary judgment against him and in failing to grant summary judgment in his favor.

### TANKERSLEY'S MOTION FOR SUMMARY JUDGMENT

■ We will address Tankersley's second point of error first. In this point,

Tankersley complains that the district court erred in denying his motion for summary judgment.[2] Tankersley argues that the collateral-estoppel doctrine precludes Wal–Mart and A & A from asserting that the policies are valid and enforceable. Collateral estoppel generally precludes relitigation of an issue that was actually litigated in a previous lawsuit where the issue was essential to the judgment and where a final judgment on the merits was rendered. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984).

Initially, we note that the *Receiver* is not bound by the Eighth Circuit's decision, irrespective of whether collateral estoppel is applicable under the facts of the present cause. The Texas Insurance Code provides that:

> No judgment or order rendered by any court of this State or of any other jurisdiction in any action pending by or against the delinquent insurer after the commencement of delinquency proceedings shall be binding upon the receiver unless the receiver shall have been made a party to such suit.

Tex.Ins.Code Ann. art. 21.28, § 4(f) (West Supp.1993). Tankersley concedes this issue by stating in his brief to this Court that he "is not contending that the Receiver is estopped from doing anything based on the Arkansas litigation." Accordingly, the Receiver is not precluded from asserting that the policies are valid and enforceable under Texas law.[3]

#### 1. *Choice of Law*

Because Tankersley is attempting to assert collateral estoppel against Wal–Mart and A & A in a state proceeding at the conclusion of a related federal proceeding, the threshold question in determining the applicability of collateral estoppel is whether state law or federal law governs in this

---

**2.** Since both parties filed motions for summary judgment, this complaint is proper. *See Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958).

**3.** Tankersley argues, however, that the Receiver cannot ratify illegal policies or bind Tankersley through the May 1990 settlement order. We will address these issues later in our discussion of the appellees' motion for summary judgment.

context. This Court has previously stated its belief that federal law controls. *See Hayes v. Pin Oak Petroleum, Inc.,* 798 S.W.2d 668, 671 (Tex.App.—Austin 1990, writ denied). When presented with this same choice-of-law question recently, however, the Texas Supreme Court did not decide the issue because the same result would have been reached whether federal or state law was applied. *See Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex.1990); *see also Trapnell v. Sysco Food Servs., Inc.,* 850 S.W.2d 529, 536 n. 5 (Tex.App.—Corpus Christi 1992, writ requested). Similarly, the same result would be reached in the present cause whether this Court applied federal or state law. Accordingly, we also decline to address the choice-of-law issue.

### 2. *Standard of Review*

■ Because of the alignment of the parties involved in the underlying suit, the present case involves "offensive" use of collateral estoppel. The applicable standard of review is "abuse of discretion." *Parklane Hosiery,* 439 U.S. at 331, 99 S.Ct. at 651; *see also Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 7 (Tex.1986) (citing *Parklane Hosiery* with approval). A court abuses its discretion only when it makes a decision without reference to any guiding rules or principles; in other words, if the court's action was arbitrary and unreasonable, such action constitutes an abuse of discretion. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

### 3. *Exceptions to Application of Collateral Estoppel*

■ We will assume *arguendo* that the requirements necessary to invoke the collateral-estoppel doctrine against Wal–Mart and A & A have been fulfilled. Before those parties are precluded from relitigating the validity of the policies, however, we

must determine whether any exceptions to the application of the doctrine exist under the facts of the present cause. Where application of offensive collateral estoppel would be "unfair," the doctrine should not be invoked: "[W]here, either for the reasons discussed above *or for other reasons,* the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Parklane Hosiery,* 439 U.S. at 331, 99 S.Ct. at 652 (emphasis added).

In making this determination, we look to section 29 of the Restatement (Second) of Judgments. Both federal and Texas state courts have cited various provisions under section 29 with approval when determining whether to apply collateral estoppel. *See Hardy v. Johns–Manville Sales Corp.,* 681 F.2d 334, 343, 346 (5th Cir.1982); *Glictronix Corp. v. American Tel. & Tel. Co.,* 603 F.Supp. 552, 571–72 (D.N.J.1984); *Trapnell,* 850 S.W.2d at 536. Even where the requirements for invoking collateral estoppel have been met, section 29 recognizes certain circumstances that may justify allowing a party to relitigate an issue, at least two of which are applicable in the present cause.[4]

■ **(a) Issue of Law.** The first circumstance we consider relevant is whether "[t]he issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based." Restatement (Second) of Judgments § 29(7) (1980). In the context of the present case, the issue of the validity of the policies is clearly one of law—the parties do not dispute the underlying facts. Courts disfavor applying collateral estoppel in the context of a pure question of law. *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.,* 755 F.Supp. 1040, 1045–46 (S.D.Ga.

---

**4.** Section 29 applies in circumstances where collateral estoppel is alleged by a party in subsequent litigation who was not a party to the prior litigation that determined the issue. Because Tankersley was not a party to the Arkansas litigation, but is alleging that the Eighth Circuit's ruling precludes Wal–Mart and A & A from relitigating issues involved in that dispute, it is appropriate for us to review the exceptions identified in section 29.

1990); *see also Divine v. Commissioner of Internal Revenue*, 500 F.2d 1041, 1048–50 (2d Cir.1974). The rationale underlying this exception is provided in comment *i* to section 29(7):

> When the issue involved is one of law, stability of decision can be regulated by the rule of issue preclusion or by the more flexible rule of *stare decisis*. If the rule of issue preclusion is applied, the party against whom it is applied is foreclosed from advancing the contention that *stare decisis* should not bind the court in determining the issue. Correlatively, the court is foreclosed from an opportunity to reconsider the applicable rule, and thus perform its function of developing the law. This consideration is especially pertinent when there is a difference in the forums in which the two actions are to be determined....

Restatement (Second) of Judgments § 29 cmt. *i* (1980) (citation omitted); *see also Glictronix*, 603 F.Supp. at 571–72. Absent application of collateral estoppel, a state district court would not be bound by an Eighth Circuit opinion interpreting Texas law. Accordingly, we conclude that the district court in the present case should be allowed the opportunity to reconsider the validity of the policies under Texas law.

**(b) Complication or Prejudice.** The second circumstance we consider relevant in determining whether Wal–Mart and A & A should be allowed to relitigate the issue of the validity of the policies is whether "[t]reating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto." Restatement (Second) of Judgments § 29(6) (1980); *see also Trapnell*, 850 S.W.2d at 537, 540. Under the facts of the present cause, treating the issue of the validity of the policies as conclusively determined both complicates the determination of the issues and prejudices the interest of another party, the Receiver.

Precluding Wal–Mart and A & A from asserting the validity of the policies, yet allowing the Receiver to do so, would clearly complicate the determination of issues in this action. As all parties agree, where a valid policy exists, the insurance company (or receiver for such) is entitled to receive premiums, and an employee covered under such policy is precluded from recovering on common-law claims. If the court is allowed to determine the validity of the policies without the limitation of collateral estoppel, the court could impose only one of two valid remedies: validate the policies and require payment of the additional premium, or invalidate the policies and allow workers such as Tankersley to pursue common-law claims. However, if the court is limited by collateral estoppel, yet concludes that the policies are in fact valid under Texas law (as the Receiver is entitled to claim), the court's judgment would be internally inconsistent—the policies would be valid as between Wal–Mart, A & A, and the Receiver, yet invalid as between Wal–Mart, A & A, and Tankersley. Such a judgment might leave Wal–Mart obligated to pay the Receiver additional premiums on policies covering workers such as Tankersley, yet simultaneously leave Wal–Mart open to liability for damages as to Tankersley's common-law claims. In other words, invoking collateral estoppel against fewer than all parties would allow the possibility of imposing *both* remedies, requiring Wal–Mart to pay for coverage from which it could receive no benefit. The obvious inconsistency that would result would therefore complicate the court's determination of this issue.

Moreover, precluding Wal–Mart and A & A from asserting the validity of the policies would prejudice the interests of the Receiver. A Texas receiver is directed by statute to "immediately proceed to conduct the business of the insurer, or to take such steps as may be necessary to conserve the assets and protect the rights of policyholders and claimants for the purpose of liquidating, rehabilitating, reinsuring, reorganizing or conserving the affairs of the insurer." Tex.Ins.Code Ann. art. 21.28, § 2(e) (West Supp.1993). Under the facts of the present cause, the Receiver has concluded (and in its May 1990 settlement order, the ancillary receivership court agreed) that declaring the policies valid and settling

the dispute with Wal–Mart and A & A was appropriate. Precluding Wal–Mart and A & A from asserting the validity of the policies, however, would prevent such a settlement and limit the Receiver's ability to resolve the dispute. In other words, the practical effect of allowing Tankersley to preclude Wal–Mart and A & A from asserting the validity of the policies would be to limit the Receiver's ability to carry out his statutory duties. Accordingly, the Receiver's interest would be prejudiced.

(c) **Policy Objectives.** Independent of the exceptions to invoking the collateral-estoppel doctrine identified in section 29, we must also consider whether the policy objectives that collateral estoppel is designed to further will be achieved if Wal–Mart and A & A are precluded from asserting the validity of the policies. *See Trapnell*, 850 S.W.2d at 541. The policy objectives include protecting parties from multiple lawsuits, conserving judicial resources, and protecting parties from the possibility of inconsistent decisions. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 553, 110 S.Ct. 1331, 1337, 108 L.Ed.2d 504 (1990); *Trapnell*, 850 S.W.2d at 536, 541. If these purposes are not fulfilled, collateral estoppel should not be invoked. *Lytle*, 494 U.S. at 552, 110 S.Ct. at 1337; *Trapnell*, 850 S.W.2d at 541.

We will first examine whether judicial resources would not be conserved under the facts of the present cause. Although Wal–Mart and A & A would be precluded from asserting the validity of the policies, the Receiver would not. This issue would, therefore, be redetermined by the court in the context of this dispute between the Receiver, Wal–Mart, and A & A. Accordingly, judicial resources would not be conserved. *See, e.g., Trapnell*, 850 S.W.2d at 541. In addition, invoking collateral estoppel in the present cause would create the possibility of inconsistent decisions. As indicated previously, if the court determined that the policies were valid, the court's judgment would be internally inconsistent and, as a result, could subject Wal–Mart to double liability. This result would only guarantee injustice. *See, e.g., id.* at 541. Accordingly, we conclude that the policy

objectives of collateral estoppel would not be furthered by invoking this doctrine in the present cause.

For the reasons stated above, we conclude that the district court did not abuse its discretion in denying Tankersley's motion and refusing to invoke collateral estoppel against Wal–Mart and A & A. Accordingly, we overrule Tankersley's second point of error.

## APPELLEES' MOTION FOR SUMMARY JUDGMENT

■ In his first point of error, Tankersley complains that the district court erred in granting appellees' motion for summary judgment. Appellees asserted three grounds for granting summary judgment: (1) the Wal–Mart policies are valid and enforceable under Texas law; (2) the policies have been judicially declared valid and enforceable under Texas law, e.g., the May 1990 settlement order, and no claim can be asserted otherwise; and (3) Tankersley and other claimants have "ratified" the policies by accepting benefits under such policies after discovering the alleged fraudulent conduct. Because the district court did not indicate a particular ground for granting the summary judgment, we must uphold the judgment on appeal if it is proper on any ground asserted in the motion. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

First, appellees contend that the policies are valid under Texas law. Because there is no dispute as to the underlying facts, this issue is presented to this Court as a pure question of law. All parties involved concede that the "side agreement" is illegal and unenforceable under Texas law. The issue before us is whether the policies themselves are legal and enforceable notwithstanding the illegality of the side agreement.

■ Under Texas law, the mere presence of an illegal side agreement does not invalidate a policy. *See Associated Employers Lloyds v. Dillingham*, 262 S.W.2d 544 (Tex.Civ.App.—Fort Worth 1953, writ ref'd); *English Freight Co. v. Knox*, 180

S.W.2d 633 (Tex.Civ.App.—Austin 1944, writ ref'd w.o.m.). Where the illegal agreement is not incorporated in the policy, but is apart from it, the policies themselves are valid. *English Freight Co.*, 180 S.W.2d at 640.

■ In the present cause, Tankersley contends that the payroll figures reflected in the policies were misrepresented and that this misrepresentation invalidates the policies. We disagree. Although the payroll figures reflected in the policies and upon which the premiums were initially calculated were understated, the policies specifically provided that "[t]he premium stated in the declarations is an estimated premium only"; the ultimate premium to be paid would be adjusted pursuant to an audit conducted at the end of each policy year. In addition, certain endorsements provided for an increased premium if losses proved greater than expected.

■ The facts of the present cause are similar to those in *English Freight*, which involved an agreement between the insurance company and the policyholder "to classify the employees covered and to pay rates on such classifications, and with waiver of payment of, or agreement not to pay, the additional premiums and debits provided for in the policies." 180 S.W.2d at 639. Similarly, in the present cause, the side agreement was an agreement to use certain payroll figures, to pay rates on such figures, and to forego payment of any additional premiums as provided in the policies. Even though the payroll figures were understated in the policy, specific provisions of the policy allowed for an adjustment to correct any erroneous calculations, whether based on a misrepresentation or otherwise. The illegal side agreement, therefore, was to waive enforcement of the provisions allowing for premium adjustment. This agreement was not incorporated in the policies, but was apart from it. Accordingly, we conclude that the policies themselves are valid. *See id.* at 640.

Because the district court's summary judgment can be upheld on this basis, we need not address the remaining grounds asserted by appellees. We overrule Tankersley's first point of error.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the district court.