**OWENS–CORNING FIBERGLAS CORPORATION, Appellant,**

v.

**William Elton SITZ et al., Appellees.**

**No. 11–97–047–CV.**

Court of Appeals of Texas,
Eastland.

May 14, 1998.

Rehearing Overruled June 11, 1998.

Kevin F. Risley, Gilpin Paxson & Bersch, Houston, Charles E. Jones, Charles E. Jones, Jr. & Associates, Sweetwater, Roger E. Podesta, Natlaie R. Williams, Steve Vaccaro, Debevoise & Plimpton, New York City, for Appellant.

John Scott, Fort Worth, R. Temple Dickson, Moore Dickson Maxwell & Baker, Sweetwater, Frank W. Conard, II, Sweetwater, E. Lawrence Vincent, Jr., Susman Godfrey, L.L.P., Dallas, for Appellees.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

## OPINION

DICKENSON, Justice.

After Fay Marie Sitz died, this lawsuit was filed by her surviving spouse, William Elton

Sitz,[1] and their children, William C. Sitz, Terry L. Sitz, Vicki Finch, and Sandra K. Boyd. Plaintiffs claimed that Mrs. Sitz' injuries and death were caused by exposure to asbestos contained in insulation marketed by Owens–Corning Fiberglas Corporation.[2] The trial court signed an order granting plaintiffs' motion for partial summary judgment that all of the liability issues relating to the marketing of asbestos, "having been fully and fairly litigated before ... shall be precluded from relitigation in this case." The partial summary judgment limited the jury trial to the issues of "causation" and "damages." The jury answered "yes" to the proximate cause and producing cause questions and then found damages in the total amount of $20,000,000.00. The trial court rendered judgment that plaintiffs recover that amount plus $8,559,987.70 as prejudgment interest.[3] Owens–Corning appeals. We reverse and remand.

### Background Facts

Fay Marie Sitz worked as a seamstress in a clothing manufacturing plant at Vernon, Texas,[4] during the years of 1964 to 1970. There was an overhead steam pipe which ran through the facility. The pipe was insulated "in the 1940s" when the clothing manufacturing plant was built. There was some repair work done on the steam pipe in 1967 or 1969. Plaintiffs' product identification "expert" walked through the plant 23 years after Mrs. Sitz stopped working there, and he expressed his opinion that the steam pipe was insulated with Kaylo and that Owens–Corning had manufactured and sold Kaylo insulation which contained asbestos. On February 17, 1991, Mrs. Sitz went to the emergency room with complaints of pain in her right chest. She died on March 20, 1991, and her doctors'

diagnosis was mesothelioma. Plaintiffs' expert witness told the jury that "every case of mesothelioma is caused by asbestos." One of defendant's expert witnesses testified by bill of exception that Mrs. Sitz would not have inhaled asbestos fibers sufficient to cause mesothelioma simply by working in a building where asbestos-containing insulation was used. That witness also testified by bill of exception that the cause of Mrs. Sitz' mesothelioma was the extensive radiation therapy which she received after treatment for breast cancer. Her right breast had been removed, and that area had been treated with radiation which had burned the skin and caused irradiation pneumonitis. Defendant's medical expert also testified in a bill of exception that recent medical reports document mesothelioma in patients with no known occupational therapy but with chest radiation therapy similar to that which Mrs. Sitz had been treated.

The trial court permitted plaintiffs to introduce a copy of defendant's 1994 annual report which showed $159,000,000.00 in net income during the cross-examination of its expert witness who owned a few shares of Owens–Corning stock in his retirement plan. After the jury returned its verdict on the first phase of trial, plaintiffs and their attorneys advised the trial court that they were waiving their claim as to punitive damages "so we can dismiss this jury." The trial judge then told the jury: "Verdict is received by the Court....You are now discharged and free to leave."

### Points of Error

Appellant argues 15 points of error. In its first point, appellant claims: "The trial court erred in granting Plaintiffs' Motion for Partial Summary Judgment."[5] In Points of Er-

1. He sued for himself individually and as administrator of her estate.

2. The original petition named 14 defendants, but Owens–Corning is the only defendant named in the final judgment.

3. The judgment dated October 29, 1996, provides for post-judgment interest at the rate of 10 percent per year compounded annually. The supersedeas bond for the sum of $39,983,983.00 was filed on November 22, 1996.

4. The trial court overruled a motion to transfer venue.

5. The next six points state specific reasons why appellant argues that the trial court erred in granting plaintiffs' motion for partial summary judgment "on offensive collateral estoppel grounds" and in precluding appellant from contesting the liability issues on whether design and marketing defects existed in "asbestos-containing Kaylo" at all relevant times; as to whether "asbestos containing Kaylo" was an unreasonably dangerous product when placed into the

ror Nos. 8, 11, and 12, appellant argues that the trial court erred in admitting testimony of plaintiffs' "product identification expert" (that he found insulation made by appellant which contained asbestos) and in excluding testimony from appellant's medical expert witness: (1) that decedent's "alleged asbestos exposure was insufficient to have caused her to develop mesothelioma" and (2) that decedent's "injuries were caused by her past radiation therapy to treat breast cancer." Appellant argues in Points of Error Nos. 9, 10, and 14 that there was "no legally, or alternatively, factually sufficient evidence" that appellant's product was the proximate or producing cause of decedent's injuries and death. Appellant argues in Point of Error No. 13 that the trial court erred in admitting its annual report during the compensatory phase of this bifurcated trial because it was not relevant to any issue which the jury was to decide during that phase of the trial. Appellant argues in Point of Error No. 15 that the trial court erred by "not reducing the damages for prior settlements."

### Offensive Collateral Estoppel

■ Plaintiffs' motion for partial summary judgment was based upon the theory of "offensive collateral estoppel." Plaintiffs relied in large part on the jury verdict against appellant in the case of Barbara Wasiak et al v. Owens–Corning Fiberglas Corporation et al, No. 92–02238–A, in the District Court of Travis County, Texas. In that case, the jury found that the negligence of Owens–Corning was a proximate cause of an asbestos-related injury to each of four plaintiffs and that, at the time the asbestos-containing products manufactured by Owens–Corning were "sold and/or marketed, and/or distributed," they were unreasonably dangerous or defective. The trial court's judgment was affirmed by the Austin Court of Appeals, but an application for writ of error was granted by the Supreme Court on October 18, 1996, eleven days before the entry of judgment in this

case. See Owens–Corning Fiberglas Corporation v. Wasiak, 917 S.W.2d 883 (Tex. App.—Austin 1996, writ granted). That case is still pending in the Supreme Court of Texas. Regardless of the outcome in Wasiak, offensive collateral estoppel should not have been applied in this case.

The United States Supreme Court discussed "offensive collateral estoppel" in Parklane Hosiery Company, Inc. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979):

> The threshold question to be considered is whether ... a litigant who was not a party to a prior judgment may nevertheless use that judgment "offensively" to prevent a defendant from relitigating issues resolved in the earlier proceeding.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The present case ... involves offensive use of collateral estoppel—a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff. In both the offensive and defensive use situations, the party against whom estoppel is asserted has litigated and lost in an earlier action. Nevertheless, several reasons have been advanced why the two situations should be treated differently.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel....The general rule should be that in cases where ... the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

See also Hardy v. Johns–Manville Sales Corporation, 681 F.2d 334, 345 (5th Cir. 1982), which discusses "offensive collateral estoppel" under Parklane Hosiery in connection with "asbestos-related cases" and then states:

---

stream of commerce; as to whether appellant failed at all relevant times to provide adequate warnings and instructions for use of "asbestos-containing Kaylo"; as to whether appellant negligently· designed and marketed "asbestos-containing Kaylo" at all relevant times; as to whether

er appellant was grossly negligent at all relevant times in marketing, manufacturing and distributing "asbestos-containing Kaylo"; and as to whether appellant was the sole manufacturer and/or distributor of "asbestos-containing Kaylo" at all relevant times.

Like *stare decisis*, collateral estoppel applies only to issues of fact or law necessarily decided by a prior court. Since we cannot say that [the earlier case] necessarily decided, as a matter of fact, that all manufacturers of asbestos-containing insulation products knew or should have known of the dangers of their particular products at all relevant times, we cannot justify the trial court's collaterally estopping the defendants from presenting evidence as to the state of the art.

[T]here is a second, equally important, reason to deny collateral estoppel effect to [the earlier judgment]: the presence of inconsistent verdicts....Not only does issue preclusion in such cases appear arbitrary to a defendant who has had favorable judgments on the same issue, it also undermines the premise that *different juries reach equally valid verdicts*....One jury's determination should not ... bind another jury's determination of an issue over which there are equally reasonable resolutions of doubt.

\* \* \* \* \* \*

[T]here have been approximately 70 similar asbestos cases thus far tried around the country [as of 1982]. Approximately half of these seem to have been decided in favor of the defendants....This court takes judicial notice of these inconsistent or ambiguous verdicts pursuant to Fed. R.Evid. 201(d). We conclude that the [trial] court erred in arbitrarily choosing one of these verdicts ... as the bellwether.

\* \* \* \* \* \*

The reason the district court here applied collateral estoppel is precisely because early cases like *Borel* [v. *Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir. 1973), *cert. den'd*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974) ] have opened the floodgates to an enormous, unprecedented volume of asbestos litigation.

\* \* \* \* \* \*

We hold today only that courts cannot read *Borel* to stand for the proposition that, as matters of [established] fact, asbestos products are unreasonably dangerous or that asbestos as a generic element is in all products a competent producing cause of cancer. *To do otherwise would be to elevate judicial expedience over considerations of justice and fair play.* (Emphasis added)

See also *Bonniwell v. Beech Aircraft Corporation*, 663 S.W.2d 816 (Tex.1984); *Tankersley v. Durish*, 855 S.W.2d 241 (Tex.App.—Austin 1993, writ den'd); *Fibreboard Corporation v. Pool*, 813 S.W.2d 658, 689 (Tex. App.—Texarkana 1991, writ den'd), *cert. den'd*, 509 U.S. 933, 113 S.Ct. 3064, 125 L.Ed.2d 746 (1993).

In *Bonniwell*, the supreme court held that subsequent plaintiffs were not barred by the judgment in favor of defendant against an earlier plaintiff because the subsequent plaintiffs had not "had their day in court." In *Tankersley*, the Austin Court of Appeals quoted both *Parklane* and *Hardy* in holding that "offensive collateral estoppel" should not be allowed where its application would be "unfair." In *Fibreboard*, the Texarkana Court of Appeals cites *Hardy* for its statement that:

It cannot be presumed that all asbestos-containing products are unreasonably dangerous or that all companies have a duty to warn of supposed dangers.

The trial court erred in its use of offensive collateral estoppel in this case. There were fact issues for the jury to decide as to whether appellant was liable to plaintiffs for the injuries and death of Mrs. Sitz. These fact issues relate to plaintiffs' claims: (1) that there were design and marketing defects in Owens–Corning's product "at all relevant times"; (2) that Owens–Corning's product was an unreasonably dangerous product in light of what was known "at the time" the product was placed into the stream of commerce (some insulation was applied to the overhead pipe "back in the 1940s" and some insulation was used when the overhead pipe was repaired in 1967 or 1969); (3) that Owens–Corning failed "at all relevant times" to provide adequate warnings and instructions; and (4) that Owens–Corning negligently designed and marketed its product "at all relevant times."

*Rendition Points of Error*

█ There was some evidence to support the jury's findings as to causation and damages; consequently, this Court overrules Points of Error Nos. 9, 10, and 14 insofar as they argue that there was "no legally sufficient evidence" to support the jury's findings of proximate cause, producing cause, and some damages. The controlling rule for appellate review of these points is stated in *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, 265 (Tex.1974):

> When a party asserts that there is no evidence to support jury findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings.

Plaintiffs' expert witness testimony constitutes some evidence to support the jury's findings, and we need not reach the claim that those findings are so against the great weight of the evidence as to be manifestly unjust. See *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

*The Other Points of Error*

Points of Error Nos. 8, 11, 12, 13, and 15 in their entirety and Points of Error Nos. 9, 10, and 14 insofar as they argue there was no "factually sufficient evidence" to support the jury's findings of proximate cause, producing cause, and damages need not be discussed. Those issues are not "necessary to final disposition of the appeal" because of our ruling on the offensive collateral estoppel points of error. TEX.R.APP.P. 47.1.

The judgment of the trial court is reversed, and the cause is remanded.