Alfred J. ANTONINI, Appellant,

v.

HARRIS COUNTY APPRAISAL DIS-
TRICT and Harris County Apprais-
al Review Board, Appellees.

No. 14–96–01483–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 26, 1999.

Richard S. Browne, Houston, for appellant.

Cheryl Wilson, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, HUDSON, and FOWLER.

## O P I N I O N

MAURICE E. AMIDEI, Justice.

Alfred J. Antonini appeals from a take nothing bench trial judgment in a breach of contract action. Antonini sued appellees for the enforcement of an agreed judgment setting appraised values of ap-pellant's properties. In three points of error, appellant contends the trial court's conclusions of law numbered one and two are erroneous, and the trial court erred in concluding that appellant's claim was barred by res judicata. We affirm.

In cause number 89–46474 (1989 case), appellant appealed the appraisal by appellees on two parcels of real property (account 001 and account 015). On July 20, 1990, Mr. Kenneth Wall, the attorney for the appellees, mailed a proposed agreed judgment to appellant with a transmittal letter that recited: "Enclosed is a proposed Agreed Judgment in the above-referenced cause. If this is satisfactory, please sign and return it to me and I will have it filed. If not, please call me." Appellant signed the proposed agreed judgment and returned it to Wall. Upon receipt of the proposed agreed judgment, Wall did not sign it because the taxing authorities advised Wall that the 1989 taxes had not been paid as required by section 42.08, Texas Tax Code. Wall advised appellant by letter dated October 29, 1990, that the agreed judgment would not be signed until the tax receipts were furnished to him as evidence of payment. Appellant furnished tax receipts for account 001, but not account 015. By letter dated February 25, 1991, Wall offered to settle the 1989 case by signing an agreed judgment on account 001 only. Appellant mailed Wall a counter-offer on February 27, 1991, which Wall did not receive until September 11, 1992, after the 1989 case had been dismissed for want of prosecution. Neither the proposed agreed judgment, nor the letters between Wall and appellant, were made part of the record in that case. Appellant did not file a motion to reinstate the 1989 case.

On June 22, 1993, appellant filed cause no. 93–32207, in another court, alleging that appellees had breached an agreement to settle the 1989 case and, in the alternative, sought an equitable bill of review to reinstate that case. In this new suit, ap-

pellant asked for specific performance of the proposed agreed judgment in 1989 or damages.

On December 10, 1993, appellant filed this cause (93–63023) seeking specific performance or damages for appellees alleged breach of the proposed agreed judgment in the 1989 case.

On July 9, 1996, cause number 93–32207 was tried in a bench trial. At the close of the evidence, and just before closing arguments, appellant took a nonsuit on the breach of contract claim without objection by appellees. The trial court entered final judgment denying all of appellant's claims in that suit.

Cause number 93–63023, the subject of this appeal, was tried in a bench trial on July 19, 1996, and the judgment was entered on August 8, 1996, that appellant take nothing.

In point one, appellant contends the trial court's first conclusion of law was erroneous because the letters exchanged between Wall and appellant following the signing and delivery of the proposed agreed judgment in the 1989 case did not affect appellant's original acceptance of the proposed agreed judgment that created a binding contract. Conclusion one provides:

1. The letters exchanged between the parties did not form a binding and enforceable contract because the last offer in the series of written negotiations was not unconditionally accepted and Antonini's counter-offer was not timely received and was not accepted.

■ On appeal, we uphold conclusions of law if any legal theory supported by the evidence sustains the judgment and we only reverse if the conclusions are erroneous as a matter of law. *State Bar of Texas v. Leighton,* 956 S.W.2d 667, 671 (Tex. App.-San Antonio 1997) *writ denied,* 964 S.W.2d 944 (Tex.1998)(per curiam).

■ Appellant argues that the transmittal letter dated July 20, 1990, from Wall with the unsigned proposed agreed judg-

ment, once signed by appellant and returned to Wall, constituted an acceptance by appellant and a contract. Wall refused to sign and file the proposed agreed judgment until appellee furnished tax receipts on both parcels of land (letter to appellant dated February 25, 1991). Appellee contends that appellant's letter dated February 27, 1991, was a counter-offer by appellant revoking Wall's original offer which was sent July 20, 1990. In pertinent part, appellant's February 27, 1991, letter stated:

Regarding Cause No. 89–46474 [the 1989 case], please process the agreed judgment on account # 0930600000001 as suggested in your letter [of February 25, 1991]. Please be aware that by allowing the processing of an agreed judgment on one (1) account; we, in no way, relinquish our right to pursue an agreed judgment [for the other account].

In its findings of fact, the trial court found that in Wall's letter to appellant dated February 25, 1991, Wall offered to settle the 1989 case by signing an agreed judgment on Account 001 only. The trial court found that appellant's reply letter of February 29, 1991, was a counter-offer by appellant, and was not received by Wall until September 11, 1992, after the 1989 case had been dismissed. Wall testified that he never received appellant's February 29, 1991, letter until September 11, 1992, when a copy of it was sent to him by appellant's attorney, Mr. Muller, via FAX transmission. Mr. Wall testified that the February 29 letter was mailed to the wrong address because it showed his street address as being "900 Clay Street" when it was 333 Clay Street. Mr. Wall further testified that appellant's counter-offer would have been rejected if timely received.

■ An acceptance must not change the terms of an offer; if it does, the offer is rejected. *Gilbert v. Pettiette,* 838 S.W.2d 890, 893 (Tex.App.-Houston[1st Dist.] 1992, no writ); *Chapman v. Mitsui Eng'r and Shipbuilding Co.,* 781 S.W.2d

312, 316 (Tex.App.-Houston[1st Dist.] 1989, writ denied). Acceptance must be identical with the offer in order to make a binding contract. *Gilbert*, 838 S.W.2d at 893. Where "negotiations" are in writing, the question of whether an offer was unconditionally accepted is primarily a matter of law for the court. *Id.* A material change in a proposed contract constitutes a counter-offer, which must be accepted by the other party. *Id.*

In this case, appellant never accepted appellees' offer to settle. Appellant rejected it by offering a new condition: "[W]e, in no way, relinquish our right to pursue an agreed judgment for account # 0931520000015 under [the 1989 case]." Appellant sent the signed proposed agreed judgment to Wall, but thereafter entered into further "negotiations" with appellees. Mr. Wall informed appellant that he could not file the proposed agreed judgment until appellant paid the taxes. After more correspondence, Mr. Wall finally proposed in his letter of February 25, 1991, that "[i]f you are unable to provide the receipts [tax receipts for both tracts], we are nevertheless prepared to enter into an agreed judgment for the larger account. Please advise." Thereafter, appellant counter-offered to the effect that they refused to "relinquish their right" to "pursue" an agreed judgment on the smaller account. Mr. Wall testified that his proposal would mean that both the larger and smaller accounts would be settled by the agreed judgment, if appellant only paid the taxes on the larger account (01), but only the value of the larger account would be reduced, leaving the value in the smaller account unchanged. Should appellant have paid the taxes on the smaller account, Mr. Wall testified that the judgment would reflect the reduced value on the smaller account (015). Appellant refused to accept Mr. Wall's offer, and counter-offered to agree only to a judgment that would reduce the appraisal value of *both* tracts for only 1989 taxes paid on the larger tract. As a matter of law, appellees had a right to reject appellant's counter-offer, and there was no contract formed. *Gilbert*, 838 S.W.2d at 893. We find the trial court's conclusion of law to be correct that there was no enforceable contract because appellant did not unconditionally accept the original proposal of the tax district, and the tax district rejected the counter-offer of appellant. We overrule appellant's point of error number one.

■ In point two, appellant contends the trial court's conclusion of law number two is erroneous and can not support the judgment because rule 11, Texas Rules of Civil Procedure, is inapplicable to the enforcement of the agreed judgment under a breach of contract theory. Appellant argues that he has an action for breach of contract that is enforceable in a *separate* proceeding, and his action is not controlled by rule 11 which required such an agreement to be filed in the 1989 case "before it [rule 11 settlement agreement] [was] sought to be enforced." *Padilla v. LaFrance*, 907 S.W.2d 454, 461(Tex.1995). The trial court's conclusion of law number two stated, in pertinent part:

2. The alleged settlement agreement is not enforceable because Antonini failed to comply with the requirements of Tex. R.Civ.Proc. 11.

a. The recent Supreme Court opinion, *Padilla v. LaFrance*, 907 S.W.2d 454(Tex.1995) refused to repudiate the requirement in *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex.1984) that a settlement agreement comply with Rule 11.

b. *Padilla* modified the third prong of *Kennedy* but did not alter the first two prongs. Plaintiff has not shown compliance with the second prong.

c. *Padilla* modified the third prong of *Kennedy* so that a Rule 11 agreement can be filed and enforced even after it is repudiated, provided it is filed before the party seeks enforcement of the agreement. While not explicitly stated in *Padilla*, or in the recent case of [no case cited], these cases indicate that the agreement must be filed in the original

suit unless special circumstances exist such as when a case is on appeal. No such circumstances exist in this case, so the third prong of *Williams* [*sic* ] and its progeny have not been satisfied.

Appellant's breach of contract claim is based on the letters exchanged between himself and Mr. Wall, as indicated in this opinion. As stated above, under point one, the trial court found there was no contract formed by the exchange of these letters. Rule 11 provides:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

Tex.R. Civ. P. 11

The exchange of letters between appellant Mr. Wall occurred while the 1989 case was pending. The 1989 case was dismissed for want of prosecution on May 15, 1991, and was not reinstated by appellant. Neither the letters nor the proposed agreed judgment were filed in the 1989 case before it was dismissed. In *Padilla,* the parties had exchanged letters concerning the settlement of a personal injury claim for $40,000.00. *Padilla,* 907 S.W.2d at 456. Padilla had agreed to pay the $40,000.00, and LaFrance agreed to pay a hospital lien out of these proceeds. *Id.* LaFrance withdrew consent to the settlement because he did not receive the settlement checks on time as directed by his demand letter. *Id.* Padilla counterclaimed in the pending suit to enforce the settlement agreement, and argued that the letters constituted a written settlement agreement under rule 11. *Id.* at 457. LaFrance contended that, even if an otherwise valid rule 11 agreement existed, it could not be enforced since LaFrance had revoked consent prior to any judgment being rendered on the agreement in the pending suit. *Id.* The supreme court held that the letters were in writing and satisfied the writing requirement of rule 11.

*Id.* at 461. The supreme court stated that the purpose of the filing requirement of rule 11 "is to put the agreement before the court so that the court can judge of its import and act upon it with safety." *Id.* "This purpose is satisfied so long as the agreement is filed *before* it is sought to be enforced (emphasis added)." *Id.* The supreme court held:

> Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement. The judgment in the latter case is not an agreed judgment, but rather is a judgment enforcing a binding contract.

*Padilla,* 907 S.W.2d at 461.

Appellant cites *Mantas v. The Fifth Court of Appeals,* 925 S.W.2d 656 (Tex. 1996) as authority for the proposition that the breach of contract to enter the agreed judgment can be enforced in a *separate* proceeding, and not just in the original proceeding (the 1989 case). Mantas appealed a money judgment against him in favor of Barnett. *Id.* at 657–58. The Fifth Court of Appeals ordered the parties to mediation, and the parties entered into a settlement agreement. *Id.* Barnett withdrew his consent to the settlement, revoking Mantas' authority to file the settlement documents on Barnett's behalf. *Id.* Mantas moved in the court of appeals to enforce the settlement, which the court of appeals denied. *Id.* The court of appeals held that the enforcement of a disputed settlement agreement, even if reached at court-ordered mediation, must be determined in a breach-of-contract cause of action under normal rules of pleading and evidence. *Id.* Mantas consequently filed a separate suit in district court to enforce the settlement agreement. *Id.* Mantas then asked the court of appeals to abate the appeal pending resolution of the enforcement suit, which the

court of appeals denied. *Id.* Mantas then sought mandamus relief from the supreme court to enforce the settlement agreement, or alternatively to abate the appeal pending resolution of the enforcement suit. *Id.* The supreme court conditionally granted mandamus relief on the abatement issue ordering the court of appeals to abate the underlying appeal pending final resolution of Mantas' suit to enforce the settlement agreement. *Id.* at 659.

The supreme court stated, in part:

Where the settlement dispute arises while the trial court has jurisdiction over the underlying action, a claim to enforce the settlement agreement should, if possible, be asserted in that court under the original cause number. However, where the dispute arises while the underlying action is on appeal, as in this case, the party seeking enforcement must file a separate breach of contract action. Because Barnett revoked his consent to the settlement before the court of appeals dismissed the appeal in accordance with the agreement, the court correctly determined that Mantas was required to seek enforcement in a separate suit. Mantas' settlement payment does not alter the procedural requirements set for in *Padilla.* Consequently, the court of appeals did not abuse its discretion in refusing to summarily enforce the settlement agreement.

*Mantas,* 925 S.W.2d at 658–59.

We do not find that *Mantas* authorizes a new suit, in a different court, when the underlying suit has been dismissed for want of prosecution. In *Mantas,* there was no settlement agreement while the case was pending in the trial court, and the settlement agreement did not come about until the case was pending on appeal. Under those circumstances, the settlement agreement that was *made while the case was on appeal* could only be enforced in a trial court under the normal rules of pleading and evidence. *Mantas,* 925 S.W.2d at 659 & n. 2( citing *Cadle Co. v. Castle,* 913 S.W.2d 627, 632 (Tex.App.-Dallas 1995,

writ denied)). In this case, the settlement agreement to enter a proposed agreed judgment was made while the 1989 case was pending, but appellant did not file the letters purporting to be the contract, or copy of the proposed agreed judgment, with the trial court as required by rule 11 before he sought to enforce the contract. It was "possible" to file the papers and hear the breach of contract case in the 1989 case, but it was not done. After appellant allowed the 1989 case to be dismissed for want of prosecution, he did not file a motion to reinstate the case nor appeal the dismissal. Because appellant failed to comply with rule 11 and *Padilla,* and the had opportunity to assert his breach of contract action in the 1989 case under the original cause number, we find the trial court correctly concluded that the settlement agreement was not enforceable. We overrule appellant's point of error two.

In point three, appellant contends the trial court erred in concluding as a matter of law that appellant's claim was barred by res judicata because the prior lawsuit did not deal with the issue of breach of contract. After the 1989 case was dismissed, appellant filed a suit in another court (No. 93–32207) on June 22, 1993, alleging appellees had breached a settlement agreement in the 1989 case. Appellant sought specific performance of the settlement agreement or damages, or, alternatively, a bill of review to reinstate the 1989 case. On December 10, 1993, appellant filed the underlying suit in this case on the same grounds seeking specific performance or damages. While this suit was pending, the prior suit (93–32207) was tried before the court. After all the evidence was submitted, but before closing argument, appellant took a nonsuit on this breach of contract claim. The trial court entered judgment in that case denying appellant's bill of review to reinstate the 1989 case.

■ Appellant argues that the first suit was only an attempt to reinstate the 1989 case, and the second suit was for specific

performance or damages for the breach of contract. Appellant asserts that the two lawsuits did not involve the same subject matter, and judgment in the first could not be res judicata of this suit. We disagree.

Appellant's original petition in the first suit (93–32207) alleges that appellant and appellees agreed to settle the 1989 case pursuant to a proposed agreed judgment, which was attached to the petition and incorporated therein by reference. Appellants prayed for specific performance of the settlement agreement or money damages for the breach. In the alternative, appellant asked for an equitable bill of review. The allegations in appellant's original petition in this suit as to the breach of contract are identical to the allegations as to the breach of contract in the first suit. As to the breach of contract, both suits sought the same recovery, the parties were identical, and the subject matter of the suits was identical. Added to the first suit was an alternative claim for bill of review. Appellant took a non-suit prior to closing arguments, and after evidence was introduced on *both* claims.

In *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 631 (Tex.1992), the supreme court clarified the Texas position on res judicata, and adopted the transactional approach of the RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) & (2) (1982). Res judicata "bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in the prior suit." *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). In defining res judicata as a general term for a group of related concepts, the supreme court stated:

> Within this general doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, *as well as related matters that, with the use of*

*diligence, should have been litigated in the prior suit.* Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit.

*Barr,* 837 S.W.2d at 628–29 (emphasis added) (footnotes and citations omitted).

Claim preclusion prevents splitting a cause of action. *Id.* Such a doctrine is necessary to bring a final end to litigation and promote judicial economy. *Id.*

In *Barr,* the supreme court adopted the "transactional approach" in determining what claims "should have been litigated" in the prior suit. The supreme court stated:

> A "transaction" under the Restatement is not equivalent to a sequence of events, however; the determination is to be made pragmatically, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage."

*Id.* at 631 (quoting section 24(2) of the Restatement (Second) of Judgments (1982)).

In this case, appellant's pleadings on his breach-of-contract claim in the first suit were identical to his breach-of-contract claim in this suit. Thus, appellant sought the same recovery for the same injury in successive trials based on the same theory of recovery against the same defendants. Appellant's claim that he nonsuited his breach-of-contract claim prior to judgment, and can thus relitigate the same claim again, is without merit. Voluntarily withdrawn claims are still subject to the doctrine of res judicata. *Jones v. Nightingale,* 900 S.W.2d 87, 90 (Tex.App.-San Antonio 1995, writ ref'd). Because appellant's claim for breach of contract in the cause number 93–32207 (first suit) was identical to the breach-of-contract claim in this suit, we find the trial court correctly concluded that his breach-of-contract claim

was barred by res judicata. Appellant's point of error three is overruled, and we affirm the judgment of the trial court.