**Reversed and Remanded and Opinion filed July 2, 2013.**



In The

# Fourteenth Court of Appeals

NO. 14-12-00794-CV

### ZACHARY COLEMAN, Appellant,

### V.

### CHRISTOPHER DEWAYNE REICH, Appellee.

**On Appeal from the County Court at Law No. 4
Harris County
Trial Court Cause No. 978,234-002**

## O P I N I O N

In a single issue, appellant Zachary Coleman contends the trial court erred by concluding on summary judgment that a series of letters filed of record as an alleged Rule 11 agreement constitute an enforceable contract. We conclude that a fact issue exists concerning whether appellee Christopher Dewayne Reich intended to accept Coleman's offer to settle or make a counteroffer. We reverse and remand.

# I

Zachary and John Coleman filed suit to recover damages allegedly sustained in a motor-vehicle accident with Reich. On July 14, 2011, the Colemans' lawyer sent a letter to Reich offering to settle Zachary's claim for $8,000.00 and John's claim for $4,500.00. The offer required a response by July 21, 2011.

On July 20, 2011, Reich responded to the July 14 offer, offering to pay $8,000.00 to settle Zachary's claim and $4,500.00 to settle John's claim. Reich's response added, however, that no settlement checks would be issued until the Colemans executed settlement documents and confirmed that no outstanding liens existed. Although the July 20 letter included a signature line for the Colemans' attorney to indicate acceptance, the letter was never signed.

On August 18, 2011, after several unsuccessful attempts to reach anyone at the law firm representing the Colemans, Reich's lawyer forwarded a letter to the law firm's principal attorney, rather than the associate who had been handling the Colemans' case. In the letter, Reich's lawyer claimed that Reich had previously accepted the Colemans' offer and therefore a valid contract settling the claims had been formed. The lawyer also warned that, unless the previously provided settlement documents were received within five days, Reich would amend his answer to assert a breach-of-contract claim.

On October 11, 2011, a different attorney from the Colemans' law firm spoke with Reich's lawyer and informed her that John had agreed to the settlement, but Zachary could not be reached. Reich's lawyer prepared a letter confirming the settlement of John's claims and forwarded it to John's lawyer, who signed and returned the letter. In March 2012, John executed a settlement agreement. John's claims were later dismissed with prejudice.

Zachary, however, refused to agree to settle his claims, so Reich moved for summary judgment on his counterclaim for breach of contract. In his motion, Reich asserted that the parties' correspondence created a valid Rule 11 agreement settling Zachary's case. Zachary argued in response that Reich's July 20 response letter was not an acceptance, but only a counter-offer, which Zachary was free to reject. After an oral hearing, the trial court agreed with Reich, and signed a final order on June 5, 2012. Zachary moved for new trial, but his motion was overruled by operation of law. This appeal followed.

## II

On appeal, Zachary contends that Reich's evidence was insufficient to prove the element of acceptance as a matter of law because the plain language of Reich's July 20 response denotes a counter-offer that was not accepted. Zachary also argues that the two letters which Reich contends form a contract (the July 14 and July 20 letters) are patently ambiguous.

Reich responds that he unambiguously accepted the Colemans' offer to settle within the allotted time frame and for the demanded amount and therefore a valid contract for settlement exists as a matter of law. Reich also argues that his subsequent actions to enforce the settlement agreement demonstrate that he intended it to be binding on both parties.

## A

Under the traditional summary-judgment standard, the movant has the burden to show that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment must conclusively negate at least one essential element of each of the

3

plaintiff's causes of action or conclusively establish each element of his cross-claim or affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon*, 690 S.W.2d at 548–49.

To prove an action for breach of contract, a plaintiff must establish the existence of an enforceable contract. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The elements of an enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on both parties; and (6) consideration. *Id.*

The acceptance must be identical to the offer. *Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1992, no writ). "It is well-settled that a binding contract must have an offer and an acceptance, and the offer must be accepted in strict compliance with its terms." *Cruse*, 165 S.W.3d at 25. An acceptance must not change the terms of an offer; if it does, the offer is rejected. *Antonini v. Harris Cnty. Appraisal Dist.*, 999 S.W.2d 608, 610 (Tex. App.—Houston [14th Dist.] 1999, no pet). A material change in a proposed contract constitutes a counteroffer, which must be accepted by the other party for there to be a valid contract. *Id.* at 611.

Likewise, a settlement agreement must contain all the essential terms of the settlement. *See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). For a settlement agreement to be enforceable, it must be in writing, signed, and filed

with the papers as part of the record, or made in open court and entered of record. *Id.* at 459 (citing Tex. R. Civ. P. 11). Further, the settlement agreement must be complete within itself in every material detail so that the contract can be ascertained from the writing, or record, without resort to oral testimony. *Id.* at 460.

Whether a contract is ambiguous is a question of law for the court. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). In construing a written contract, the court's primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Id.* If the contract's language can be given a certain and definite meaning, the agreement is not ambiguous, and the contract's construction is a matter for the court. *Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012). But if the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous, creating a fact issue on the parties' intent. *Id.*; *J.M. Davidson, Inc.*, 128 S.W.3d at 229.

B

With the foregoing principles in mind, we turn to the written negotiations between the parties. Zachary's July 14 settlement demand provided as follows:

> In response to our phone conversation this afternoon and in an attempt to resolve this matter without further costs and litigation, my clients would like to extend an offer of settlement.
>
> I am authorized to make an offer of $4,500.00 to settle John Coleman's claim and $8,000[.00] to settle Zachary Coleman's claim.
>
> PLEASE FORWARD A COPY OF THIS LETTER TO YOUR INSURED AND RESPOND BY July 21, 2011.
>
> Should you need any more information about Plaintiffs' claims prior to the July 21st, 2011 deadline, feel free to contact me . . . .

The substantive portion of Reich's response is as follows:

> In response to your demand in the amount of $4,500[.00] for John Coleman and $8,000.00 for Zachary Coleman, my client's

carrier has authorized me to *extend to your clients an offer* in the amount of $4,500[.00] for John Coleman and $8,000.00 for Zachary Coleman. *If you agree to accept said offer*, please indicate same by signing below and providing the requested information. Please be advised that I will need confirmation that there are no outstanding liens prior to issuing any checks. *Unless we notify you otherwise in writing, this offer will remain open, even if you reject it, until trial begins*.

Further, please understand that before I can forward you the settlement check, I will need to receive your client's executed settlement documents.

(emphasis added). At the bottom of the letter was a signature block for the Colemans' lawyer and three blank lines for entry of tax-identification information, the status of liens, and the names to whom the checks should be made payable. The letter was neither signed by the Colemans' lawyer nor returned. Thereafter, no one at the Colemans' law firm communicated with Reich's lawyer for almost three months.

In an attempt to contact someone at the Colemans' law firm, on August 18, Reich's lawyer sent the following letter to the firm's principal attorney:

My client's carrier has authorized me to *accept your demand* in the amount of $4,500[.00] for John Coleman and $8,000.00 for Zachary Coleman. As you know, *since you extended this offer and we have accepted this offer a valid contract has been formed*. . . .

Please let this letter confirm that if we do not receive the signed settlement documents that we provided on July 20, 2011 and again on August 5, 2011 within five (5) days from the date of this letter, we will amend our answer and assert a breach of contract claim. If you need another copy of the settlement documents, please let me know and I will have them resent to you a third time.

(emphasis added). In October, Reich's lawyer forwarded an acceptance of the offer to settle John's claims. This letter also contained language of acceptance:

In response to your demand in the amount of $4,500 for Plaintiff John Coleman, *my client's carrier has authorized me to accept this demand*. Please sign below and provide the requested information. . . .

(emphasis added). The remainder of this letter mirrored Reich's July 20 response. This time, however, John's lawyer signed and returned the letter.

Reich maintains that the terms in Zachary's July 14 demand letter and Reich's July 20 response are unambiguous because Zachary indicated that he was willing to accept $8,000.00 to settle his claims against Reich, and Reich was willing to pay the exact amount Zachary demanded. Reich also maintains that his July 20 response is not ambiguous because "[t]he classification of a document as an offer or a counter-offer has no bearing on the meaning of terms within." Therefore, Reich contends, "the terms of the settlement contract as a whole are unambiguous."

We cannot agree with Reich's assertion that he unambiguously accepted Zachary's settlement demand in his July 20 response to Zachary's July 14 settlement demand. As the summary-judgment movant, Reich had the burden to conclusively prove that he was entitled to judgment on his breach-of-contract counterclaim as a matter of law. In his July 20 response, Reich repeatedly stated that he was making an offer to settle, which Zachary was free to accept or reject: "[m]y client's carrier has authorized me to *extend* to your clients *an offer*" in the amount of . . . $8,000.00 for Zachary Coleman. *If you agree to accept said offer*, please indicate same by signing below and providing the requested information. . . . Unless we notify you in writing, *this offer will remain open, even if you reject it, until trial begins*." Nowhere in the response does Reich indicate an acceptance of Zachary's demand. Moreover, the letter included a signature block to be signed by Zachary's lawyer to indicate Zachary's acceptance, presumably

7

because Reich was extending a counter-offer. Given Reich's repeated references to an "offer" to settle, the indication that the offer would remain "open" until trial even if rejected, the expectation that Zachary's lawyer would sign the July 20 response to indicate Zachary's acceptance, and the additional requirements imposed before Reich would be willing to issue any settlement checks, Reich's offer to pay the same amount Zachary demanded does no more than raise a fact issue as to whether Reich intended his response to be an acceptance or a counter-offer.

For these reasons, Reich's reliance on *Padilla v. LaFrance* is misplaced. In *Padilla*, the supreme court held that Rule 11's requirement that agreements "be in writing" could be satisfied by a settlement agreement contained in more than one writing if the writings incorporated all material terms of the agreement. 907 S.W.2d at 459–60. Reich argues that the correspondence in this case satisfies the requirements of a Rule 11 agreement because it contains all the material terms, including Reich's timely promise to pay the settlement amount in exchange for a release from liability. *See id.* at 460–61. But the *Padilla* court did not consider whether the purported settlement agreement was ambiguous. Additionally, there is no evidence that Zachary took any action indicating that he accepted the terms of Reich's July 20 response. *See id.* at 460 (noting that a different method of acceptance may be effectual where the original offeror thereafter manifests his assent to the other party).

Moreover, Reich's assertion in later correspondence that his July 20 response was an acceptance does not conclusively demonstrate that it was. In the August 18 letter, Reich's lawyer stated that she was authorized "to *accept* your demand" and had "sent *acceptance* of your offer on July 20, 2011." Similarly, in the October 11 letter, Reich's lawyer edited the format of the July 20 letter to insert

the term "accept" in place of "extend to your clients an offer" concerning John's settlement: "In response to your demand in the amount of $4,500[.00] for Plaintiff John Coleman, my client's carrier has authorized me to *accept* this demand." Indulging all inferences in Zachary's favor, as we must, these later references could be viewed as no more than attempts to re-characterize Reich's counter-offer as an acceptance once Reich's lawyer recognized the error.

Based on the foregoing, we hold that the trial court erred by granting summary judgment in favor of Reich, because Reich's July 20 response to Zachary's July 14 settlement demand was ambiguous concerning whether Reich intended to accept Zachary's offer or to propose a counter-offer which Zachary was free to accept or reject. *See Milner*, 361 S.W.3d at 619; *Antonini*, 999 S.W.2d at 610–11; *Gilbert*, 838 S.W.2d at 893. We therefore sustain Zachary's issue.

* * *

We reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.

/s/    Jeffrey V. Brown
       Justice

Panel consists of Justices Frost, Brown, and Busby.

9