**Affirmed and Memorandum Opinion filed April 17, 2014.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-13-00125-CV

## MAX PROTETCH, INC., Appellant

## V.

## JOHN A. HERRIN, Appellee

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-29153**

## M E M O R A N D U M   O P I N I O N

Max Protetch, Inc. appeals the trial court's judgment in favor of John A. Herrin in connection with Herrin's breach of contract claim. We affirm.

### BACKGROUND

The late Scott Burton was a sculptor known for his furniture designs. Herrin and his wife, Carola, discovered Scott Burton's work and became interested in purchasing a Scott Burton arch table and chairs. At that time, Protetch, Inc. had

the exclusive right to market, fabricate, and sell Scott Burton pieces.

The Herrins met Protetch, Inc.'s owner, Max Protetch, in New York in December 2004 to discuss purchasing a Scott Burton table. After learning the price of a table and chairs, the Herrins decided to purchase only a table. Max Protetch directed the Herrins to the Cooper-Hewitt, National Design Museum in New York to view a Scott Burton table that was on display. He also told the Herrins that the McNay Art Museum in San Antonio was displaying Scott Burton pieces.

The Herrins visited the Cooper-Hewitt, National Design Museum and inspected the Scott Burton table and chairs. The Herrins testified that the table on display was a "honey, golden color and it had a translucency where you could just sense that there was stainless steel beneath it." The Herrins later visited the McNay Art Museum in San Antonio and testified that the Scott Burton chairs on display had the same finish as the table on display at the Cooper-Hewitt, National Design Museum.

After inspecting the table at the Cooper-Hewitt, National Design Museum, the Herrins decided to purchase a table from the same edition. Max Protetch warned the Herrins that there might be some variation in the color and finish. Max Protetch sent Herrin an invoice on March 4, 2005, reflecting the purchase of a Scott Burton table for $65,000. The invoice included this information: (1) the parties' name; (2) a reference to the table being a part of a Scott Burton edition of five;[1] (3) the table's length, width, and height; (4) the table's price; (5) payment terms; and (6) a reference to the table's steel composition. Herrin testified that the table's color was not specified in the invoice because there was no question what

---

[1] Max Protetch testified at trial that "3/5D" in the invoice meant that the table was "number 3 in an edition of 5."

the color was to be.

The Herrins paid the balance due on the table in February 2006. Peter Versteeg fabricated the table.[2] Versteeg testified that the table was properly fabricated in accordance with the Scott Burton's blueprints. The table was delivered to the Herrins' Houston home on May 31, 2007.

Herrin testified that he was extremely displeased with the color of the table because it did not match the table on display at the Cooper-Hewitt, National Design Museum or the chairs on display at the McNay Art Museum. The next day, Herrin called and emailed Max Protetch to complain that the color and finish of the table were incorrect.

Max Protetch traveled to Houston in July 2007 to inspect the table. After inspecting the table, Max Protetch offered to refinish it. Max Protetch later learned that the table could not be refinished; he offered to have a new table fabricated for Herrin. Max Protetch sent Herrin pictures of the new table. Herrin testified that the pictures revealed that the second table had the same finish and was essentially the same color. Herrin told Max Protetch in an email that he was dissatisfied with the appearance of the second table. Max Protetch responded to Herrin's complaint by stating:

> We should also remind ourselves that the one you initially saw is more than 10 years old. The translucent gold brown quality is something that develops as the steel ages, and the same effect can be expected with this new piece a few years down the road.

Herrin rejected the second table and demanded his money back.

Protetch, Inc. refused to refund Herrin's money, and Herrin sued Protetch,

---

[2] Versteeg worked directly with Scott Burton before he died and was the only person to fabricate Scott Burton tables at the time of this suit.

Inc. for breach of contract.[3] The case was tried before a jury. At trial, Herrin introduced pictures of the first table he received, the second table he was offered, the pair of Scott Burton chairs on display at the McNay Art Museum, and a prototype of the Scott Burton table.[4] The pictures of the first table he received and the second table he was offered show that the tables were dark grey. The picture of the chairs at the McNay Art Museum and the prototype show that these pieces were a honey gold color. The jury found that Protetch, Inc. breached its contract with Herrin. This appeal followed.

**ANALYSIS**

In one issue on appeal, Protetch, Inc. asserts that the evidence is legally and factually insufficient to support the jury's finding of breach of contract. Protetch, Inc. argues that (1) the parties' contract did not contain a provision for a particular color or finish for the table; (2) the parol evidence rule prohibits Herrin from adding additional terms to the contract; (3) color was not a term of the parties' agreement because Herrin never informed Protetch, Inc. that he wanted the table to be a particular color; (4) Herrin was warned that no particular color or finish was guaranteed; and (5) expert testimony established that the table was fabricated properly in compliance with the deceased artist's blueprints.

## I. Legal and Factual Sufficiency Challenges

### A. Standard of Review and Applicable Law

When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d

---

[3] Carola Herrin was not a party to the suit.

[4] Max Protetch testified at trial that a prototype is "a piece that's made in preparation for making an edition and sometimes there are changes from the prototype, working out ideas."

4

802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could do so, and disregard contrary evidence unless a reasonable fact finder could not do so. *Id*. at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id*. Evidence is legally insufficient when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

When reviewing the factual sufficiency of the evidence, we must consider and weigh all the evidence. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Id*. We may not substitute our own judgment for that of the trier of fact. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Jones v. Smith*, 291 S.W.3d 549, 555 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

## B.    The Agreement

The jury answered "yes" to a question in the jury charge asking, "Did Max Protetch, Inc. fail to comply with the parties' agreement?" The jury charge did not define the term "agreement." Protetch, Inc. does not argue on appeal that the trial court erred by failing to define agreement in the jury charge.

The essential elements of breach of contract are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages as a result of the defendant's breach. *West v.*

*Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). A breach occurs when a party fails or refuses to do something he has promised to do. *Id.* To prove the existence of a valid contract, a plaintiff must establish: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on both parties; and (6) consideration. *Coleman v. Reich*, 417 S.W.3d 488, 491 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Protetch, Inc. asserts that all governing contract terms are contained in the March 4, 2005 invoice, and that "the parol evidence rule bars Herrin's subjective interpretations" of any asserted contract terms that do not appear in the invoice. Protetch, Inc. cites *Harrison v. Facade, Inc.*, 355 S.W.2d 543, 545 (Tex. Civ. App.—Dallas 1962, no writ), for the proposition that, "[w]hen a business uses invoices and when the invoice contains the important terms of an agreement incorporated into it, the invoice is the parties' contract."

In *Harrison*, the parties engaged in a course of business dealings in which the plaintiff ordered goods from the defendant. *Id.* at 544. Upon receiving an order, the defendant sent the goods and an invoice containing the terms of the parties' agreement to the plaintiff. *Id.* at 555. The price of the goods ordered and other items were mentioned for the first time in the invoice. Thus, the parties' contract was not complete until the plaintiff accepted the invoice together with the goods. *Id.* at 546. Based on these facts, the court held that the invoice was the parties' contract. *Id.*

*Harrison* is inapposite here. Viewed in light of the charge as given, which did not define the term "agreement," the evidence in this case supports a finding of a prior completed oral contract. Max Protetch testified that he reached an

agreement with Herrin before the March 4, 2005 invoice was sent. He also testified that the invoice reflected the terms of the prior oral agreement.

Protetch, Inc.'s reliance on the parol evidence rule also is misplaced. "When the parties have concluded a valid, integrated agreement, the parol evidence rule precludes enforcement of a prior or contemporaneous inconsistent agreement." *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). A written instrument is integrated if it presumes that all prior agreements relating to the transaction have been merged into it and will be enforced as written. *Id.* When the written agreement contains a merger clause, the parol evidence rule is particularly applicable. *See id.*

Here, the invoice did not contain an integration or merger clause. The invoice is not a valid integrated agreement, and the parol evidence rule does not apply. *See Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011).

## C. Color as a Term of the Agreement

Having concluded that the invoice was not a valid integrated agreement, it is necessary to determine whether color was a term of the oral agreement. Protetch, Inc. asserts that it did not breach its contract with Herrin because color was not a term of their agreement. To support this assertion, Protetch, Inc. argues that (1) Herrin did not inform Protetch, Inc. of the color he wanted; (2) Herrin was warned that no particular color or finish was guaranteed; and (3) expert testimony at trial established that the table was properly fabricated in accordance with Scott Burton's blueprints.

Protetch, Inc. argues that color cannot be a term of the parties' agreement because Herrin did not specify the color he wanted. Herrin asserts that he did not

7

discuss color with Protetch, Inc. because the parties agreed that Herrin's table would be the same edition as the table at the Cooper-Hewitt, National Design Museum. At trial, the Herrins, Max Protetch, and Versteeg[5] testified that pieces from the same edition should be the same color and finish. Herrin testified that Protetch, Inc. did not have a Scott Burton piece; therefore, Max Protetch directed Herrin to the Cooper-Hewitt, National Design Museum and McNay Art Museum to view Scott Burton pieces and understand what the table would look like. Herrin described the table and chairs on display at the museums as a translucent honey gold color. A picture of the chairs at the McNay Art Museum shows that they were a honey gold color. Herrin also testified that the pieces were in the same edition as the table he and his wife were interested in purchasing.

Protetch, Inc. asserts that color cannot be a term of the contract because its owner, Max Protetch, warned Herrin that no particular color or finish was guaranteed. Herrin argues that he was not warned that no particular color or finish was guaranteed; instead, he testified that he was warned that "some variation" in color was possible. Herrin further cites Versteeg's testimony that only slight variations of color are to be expected in pieces within the same edition.

Protetch, Inc. also argues that expert testimony conclusively establishes that it did not breach its agreement with Herrin. Versteeg testified that the table was properly fabricated in accordance with Scott Burton's blueprints, and that a honey gold color Scott Burton table with a translucent finish did not exist. He further testified that fabricating such a table would violate his agreement with the New York Museum of Modern Art.

Evidence at trial established that Scott Burton pieces in the same edition

---

[5] Peter Versteeg was Protetch Inc.'s only expert witness. At the time of trial, he was the only person to have fabricated a Scott Burton table after Scott Burton died.

were a different color than the table Herrin received. Herrin testified that the table he and his wife received was "blackish with just a hint of brown to it." Pictures also demonstrated that the table Herrin received was a different color than the chairs on display at the McNay Art Museum. Further, Max Protetch indicated in an email to Herrin that the table he received was a different color than the other pieces in the edition, stating:

> We should also remind ourselves that the one you initially saw is more than 10 years old. The translucent golden brown quality is something that develops as the steel ages, and the same effect can be expected with this new piece a few years down the road.

There was no testimony that Max Protetch warned Herrin that the honey gold color would take years to acquire. Viewing this evidence in a light most favorable to the verdict, a reasonable jury could have concluded that Protetch, Inc. breached its contract with Herrin because Herrin had a reasonable expectation that his table would have a translucent, honey gold finish. *See City of Keller*, 168 S.W.3d at 821 ("[I]n every circumstance in which reasonable jurors could resolve conflicting evidence either way, reviewing courts must presume they did so in favor of the prevailing party, and disregard the conflicting evidence in their legal sufficiency review."); *Waterways on Intercoastal, Ltd. v. State*, 283 S.W.3d 36, 43 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Likewise, weighing the evidence in the record before us, we cannot conclude that the jury's finding that Protetch, Inc. breached its agreement with Herrin is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761.

We conclude that the jury's finding that Protetch, Inc. breached its contract with Herrin is supported by more than a scintilla of evidence; thus, the evidence is legally sufficient to support a judgment based on the jury's verdict. Further, we

9

cannot, based on this record, say that the jury's finding is against the great weight and preponderance of the evidence; thus, the evidence is factually sufficient as well.

### CONCLUSION

We conclude that the evidence is legally and factually sufficient to support the jury's finding. We therefore overrule Protetch, Inc.'s single issue on appeal and affirm the trial court's judgment.

_____
William J. Boyce
Justice

Panel consists of Justices Boyce, Christopher, and Brown.