# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00401-CV

---

**Hiep Huynh, Appellant**

**v.**

**Connie Last, Appellee**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-002669, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

This case concerns the validity and scope of a release of Connie Last's personal-injury claims arising from a collision between Last's bicycle and a vehicle driven by Appellant Hiep Huynh.[1] In Last's negligence suit, Appellant counterclaimed for reformation of the release to provide that Last released her claims against Appellant. Appellant contended that the release's failure to include Appellant among the released parties was a scrivener's error, while Last contended that the release effectuated the parties' agreement prompted by Appellant's insurer. The trial court denied Appellant's motion for summary judgment on the reformation counterclaim and

---

[1] Because more than one person named Huynh is mentioned in this opinion, we will refer to Hiep Huynh as "Appellant" to reduce the potential for confusion.

granted Last's motion for summary judgment rejecting that counterclaim. We will reverse the judgment and remand for further proceedings.

## BACKGROUND

Appellant was listed as a "household driver" covered by an auto insurance policy underwritten by Farmers Texas County Mutual Insurance Company (Farmers). The named insured on the policy was Phuoc Huynh. The policy also listed Bachhoa Nguyen as an additional covered household driver alongside Appellant.

Last and Appellant collided on November 14, 2018. By letter from Last's attorney to Farmers dated April 22, 2019, Last asserted that she sustained injuries as a result of the November 14, 2018 collision. She requested "a settlement in the amount of policy limits" under the Farmers policy covering Appellant. The letter stated, "in exchange for payment of the policy limits, Connie Last will provide a release of Hiep Huynh and others who may be liable" under the policy for Last's injuries. She requested a response on or before May 22, 2019, and asserted that, in order to accept the demand, Farmers must provide the release with its response and deliver the check on or before May 22, 2019.

By letter dated May 3, 2019, Farmers's field claim representative Garrett Wynne responded

> We've evaluated your client's claim based on the information presented and are prepared to accept your demand you [sic] policy limits and resolve their Bodily Injury claim for $30,000.00 (Thirty Thousand Dollars), inclusive of all liens.

> If your client accepts the settlement, please have your client execute the enclosed release.

2

The release enclosed provided

> For and in consideration of the sum of $30,000.00 (Thirty Thousand Dollars), RECEIPT OF WHICH IS ACKNOWLEDGED, I/we, Connie Last, release and forever discharge **Phuoc Huynh and Bachhoa Nguyen** and their principals, agents, and representatives, from any and all rights, claims, demands and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to bodily injury arising from an accident that occurred on or about November 14, 2018 at or near Austin, TX.

(Emphasis supplied.)

By letter to Farmers from her attorney dated May 15, 2019, Last stated that she "hereby withdraws her offer of settlement made on April 22, 2019." By letter dated May 22, 2019, Last's attorney wrote to Farmers

> Connie Last's May 15th withdrawal of her policy limits demand was a clerical error.
>
> We are re-extending the policy limits demand on the same terms as stated in the April 22, 2019 letter and it will remain open until June 14, 2019.
>
> Please note that if you wish to accept the policy limits demand, you should provide a release by June 14, 2019.

By letter dated May 23, 2019, Farmers responded, "We received your letter dated 5/23/2019. Our offer to resolve your client's claim for our $30,000 policy limit still stands. I have included a copy of the original offer letter, release, and declarations page." The proposed release again discharged Phuoc Huynh and Bachhoa Nguyen but did not mention Appellant.

Last signed the release and dated it June 18, 2019. Farmers then sent checks to Last's attorney, Blue Cross Blue Shield of Texas, and St. David's Round Rock for amounts totaling $30,000.

3

On August 9, 2019, Last sued Appellant for causing her injuries by driving a vehicle negligently and hitting her bicycle. Appellant first sought to enforce the settlement agreement. The trial court denied the motion.[2] Appellant then filed a counterclaim for the equitable relief of "specific performance such that Plaintiff be ordered to release Defendant, or reformation of the release so as to insert Hiep Huynh's name as one of the released parties, so that the Release will reflect the true agreement of the parties." Appellant filed a motion for summary judgment on the counterclaim for reformation, which the trial court denied. Later, Last moved for no-evidence and traditional summary judgment on the reformation counterclaim, and the trial court granted the motion without stating which form of summary judgment it granted.

Farmers's representative Wynne testified that his May 3 letter was an offer-letter template he modified to accept Last's demand. The template used the name Phuoc Huynh in the heading because Phuoc was the named insured. Wynne said that the second sentence of the letter beginning with "If your client accepts this settlement . . ." was part of the original template and that he had been instructed to minimize his changes to the approved forms; when asked why the letter conditioned signing of the release on "*[i]f* your client accepts the settlement" (italics added) if Farmers was merely accepting Last's offer, Wynne replied, "That's what the system spits out." He testified that his intent was to pay the policy limits to obtain a release for Appellant and others who may be liable consistent with the terms of Last's demand that Farmers was accepting. He testified that his intention was to include the named insured and the driver in the release. Looking at the three household drivers covered by the policy rather than Last's letter or the police report,

---

[2] The trial court explained its reasons for denying the motion to enforce in a letter attached to Last's motion for summary judgment. The trial court sustained Appellant's objection to the letter as irrelevant and immaterial. Last does not challenge that evidentiary ruling in this appeal.

4

Wynne inserted Bachhoa Nguyen instead of Appellant. He described the omission of Appellant as a clerical error that prevented the release from reflecting the true agreement of the parties that Last would release Appellant and others who may be liable. He testified that "the names are very uncommon and [he] got confused and put the wrong one in." He testified that he understood that the payment and release were to resolve Last's claim, and that releasing everyone but the driver would not resolve her claim: "That wouldn't make any sense," Wynne testified. He said that he was unaware that he had inserted someone other than the driver in the release. He testified that the release was not an accurate written representation of his agreement with Last's attorney.

Last's attorney testified at his deposition that he considered Farmers's May 23 letter a counteroffer because it did not mention Appellant and it used the word "offer" in distinction from a prior offer. He also noted Farmers's failure to provide a check in response to the original letter and its failure to insist in response to Last's May 15 withdrawal letter that Farmers had on May 3 accepted Last's original offer. The trial court sustained Appellant's objection that Last's attorney's deposition testimony was "legally conclusive."

After granting Last's motion for summary judgment on Appellant's counterclaim, the trial court severed the counterclaim making the summary judgment on it a final and appealable judgment.

**LEGAL STANDARDS**

"We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). A party moving for traditional summary judgment must

demonstrate that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). By contrast, a party may obtain a no-evidence summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *Id.* R. 166a(i). To defeat a no-evidence motion, the nonmovant has the burden to "present evidence raising a genuine issue of material fact supporting each element contested in the motion." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021).

A genuine issue of material fact exists if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Circumstantial evidence can defeat a no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Parker*, 514 S.W.3d at 220 (citing *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

When the parties have filed competing or cross-motions seeking summary judgment and the trial court grants one and denies the other, an appellate court may review both motions and render the judgment the trial court should have rendered. *See, e.g., Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996).

## DISCUSSION

Appellant presents four issues on appeal that are subparts of the summative claim that the trial court erred by granting Last's summary-judgment motion and denying Appellant's

6

motion. Appellant contends that the trial court erred by considering the "scrivener's error" omitting Appellant from the release as a rejection of Last's offer, that the parties reached an agreement not effectuated due to the error in the release, that the trial court erred by granting Last's motion because evidence raised a fact issue, and that no grounds in Last's motion justify the court's ruling. Appellant asks that we reverse the judgment favoring Last and render summary judgment for Appellant.

## I. Law applicable to reformation and contracts

The objective of reformation is the correction of a mutual mistake made in preparing a written instrument so that the instrument reflects the original agreement of the parties. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987). Reformation claims require establishment of two elements: (1) an original agreement, and (2) a mutual mistake, made after the original agreement, in reducing the original agreement to writing. *Id.*

### A. Agreement

A binding contract[3] requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; (5) consideration; and, if the contract is in writing; (6) execution and delivery of the contract with the intent that it be mutual and binding. *St. David's Healthcare P'ship v. Fuller*, 627 S.W.3d 707, 710 (Tex. App.—Austin 2021, pet. dism'd). The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and how they

---

[3] Appellant asserts that it is not necessary to prove that the agreement to release Appellant was an enforceable contract. Because the result of our review is the same regardless of whether the agreement to release must be an enforceable contract or something less binding, we need not decide the merits of Appellant's assertion.

acted, not on their subjective state of mind. *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 589 (Tex. App.—Austin 2007, pet. denied). "An acceptance must not change the terms of an offer; if it does, the offer is rejected." *Coleman v. Reich*, 417 S.W.3d 488, 491 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In such a situation, the purported acceptance "constitutes a counteroffer, which must be accepted by the other party for there to be a valid contract." *Id.*

We review questions of contract construction de novo. Whether contract formation is a question of law or fact hinges on whether the parties' intent to be bound is unambiguously expressed on the face of the contract. *See John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 16 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). "[W]here that intent is clear and unambiguous on the face of the agreement, it may be determined as a matter of law." *Id.*; *see also COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 666 (Tex. App.—Dallas 2004, pet. denied) (noting that "in the ordinary case, the writing alone will be deemed to express the intent of the parties"). When the language of a release is clear and unambiguous, we may not look to parol evidence to change or contradict the language of the contract. *See Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex. 1996); *Solorzano v. Sage Com. Grp. LLC*, ___ S.W.3d ___. No. 14-22-00219-CV, 2024 WL 269643, at *6 (Tex. App.—Houston [14th Dist.] Jan. 25, 2024, pet. filed). However, if the parties' intentions expressed in the document are indefinite and unclear, ambiguity exists, and the issues of contract formation and intent to be bound become questions of fact. *John Wood Group*, 26 S.W.3d at 16. "Objective, not subjective, intent controls." *COC Servs.*, 150 S.W.3d at 666.

**B.** **Mutual Mistake**

The elements of mutual mistake are (1) a mistake of fact; (2) held mutually by the parties; (3) which materially affects the agreed-on exchange. *See Wyrick v. Business Bank of Tex., N.A.*, 577 S.W.3d 336, 350 (Tex. App.—Houston [14th Dist.] 2019, no pet.). "A mutual mistake of fact occurs when the parties to an agreement have a common intention, but the written agreement does not accurately reflect that intention due to a mutual mistake." *New York Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 212 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see City of The Colony v. North Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth 2008, pet. dism'd). A scrivener's error is a clerical error that results from a minor mistake or inadvertence, a drafter's technical error that can be rectified without serious doubt about the correct reading. *Solorzano*, 2024 WL 269643, at *6 n.3.

The law presumes that a written agreement correctly embodies the parties' intentions and accurately expresses the agreement the parties reached in prior oral negotiations. *Estes v. Republic Nat'l Bank of Dall.*, 462 S.W.2d 273, 275 (Tex. 1970). Claims that both parties made a mistake regarding the terms in a written agreement are often difficult to prove because a party who signs a document is presumed to know its contents. *Toler v. Sanders*, 371 S.W.3d 477, 482 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The general rule is that in the absence of a showing of fraud or imposition, a party's failure to read an instrument before signing it is not a ground for avoiding it. *Estes*, 462 S.W.2d at 276.

To prove a mutual mistake, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A unilateral mistake by one party, combined with knowledge of that mistake by the other party, is equivalent to mutual

9

mistake. *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988). But, "[a] mistake by only one party to an agreement, not known to or induced by acts of the other party[,] will not constitute grounds for relief." *Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1974).

## II. Summary judgment is inappropriate on this record.

In her motion, Last asserted that Appellant could not produce evidence sufficient to raise a genuine issue of material fact as to either element required for reformation: 1) an agreement between Last and Appellant to release Appellant or 2) a mutual mistake by the parties in the agreement. Alternatively, Last asserted that there is no genuine issue as to any material fact and that she is entitled to judgment as a matter of law denying the counterclaim. Appellant sought summary judgment on grounds that the parties agreed that Appellant would be released.

As a threshold issue, we will consider Last's argument that the trial court (and this Court) lack jurisdiction under Texas Rule of Civil Procedure 11 to consider reformation of the release. The trial court implicitly rejected this jurisdictional argument because it granted judgment on the merits. Last contends that courts lack jurisdiction to enforce anything other than literal compliance with an agreement that is signed and filed with the court. *See Trevino v. Houston Orthopedic Ctr.*, 831 S.W.2d 341, 344 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Because the release does not address claims against Appellant, Last contends that courts lack jurisdiction over this counterclaim for reformation that Last deems a "stylized version of a motion to enforce." But the reformation portion of the counterclaim appealed does not seek enforcement. Even if it does, both the release and the letters Appellant asserts formed the agreement to release the claims against Appellant are signed and filed as part of the record. Appellant seeks reform of

10

the release to comply with the underlying agreement evidenced by the signed letters in the record. We conclude that Last's jurisdictional argument fails.

The documentary record is inconclusive regarding the parties' agreement. Last unequivocally offered to release her claims against Appellant in exchange for $30,000 from Farmers; the claims, as stated in the original April 22 letter, were for her injuries sustained in a collision caused by Appellant—not by any of the others insured by the Farmers policy that covered Appellant. In the May 3 response to Last's attorney, Farmers states that it is "prepared to accept" Last's demand and that, "[i]f your client accepts the settlement, please have your client execute the enclosed release." Last withdrew, then "re-extended" her offer "on the same terms as stated in the April 22, 2019 letter." Farmers responded, "Our offer to resolve your client's claim for our $30,000 policy limit still stands." With its responses to Last's letters, Farmers included the release that released insured persons other than Appellant. Though Farmers stated that it was prepared to accept Last's offer and the re-extended offer, the release plainly does not effectuate Last's offer to release Appellant in exchange for $30,000. Farmers's statement in the May 3 letter that Last should sign the release if she "accepts the settlement" did not itself propose any change in the party to be released or any other term of Last's offer, nor did Farmers's May 23 statement that its "offer" to resolve Last's claim still stood. The accompanying release is written from the standpoint of Last releasing claims and is not in the language of an offer *from* Farmers.

The non-documentary evidence is not conclusive either. Wynne's testimony regarding what he believed the agreement was does not establish what Last and her lawyer believed the agreement was.

The record contains more than a scintilla of evidence, but not conclusive evidence, that the parties agreed that Last would release Appellant from liability in exchange for $30,000

11

from Farmers. But the record also contains evidence that Farmers counteroffered with terms consistent with the release that did not release Last's claims against Appellant even though, as Wynne testified, "That doesn't make any sense." There is a genuine issue of material fact concerning whether there was an agreement and what the terms of that agreement were.

There is also some, but not conclusive, evidence of a mutual mistake by the parties regarding the absence of a release of Last's claims against Appellant. The release Last signed plainly did not release her claims against Appellant. Though in Texas a writing is generally construed most strictly against its author, *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, 578 S.W.2d 109, 115 (Tex. 1978), Last signed the agreement and is presumed to have read it. *Toler*, 371 S.W.3d at 482; *see Moore v. Moore*, 383 S.W.3d 190, 196 (Tex. App.—Dallas 2012, pet. denied) ("In the absence of trickery or artifice, parties are presumed to have read and understood the documents they sign."). There is thus some evidence that Last was aware that, though Last offered to release her claims against Appellant in exchange for Farmers's payment and that Farmers accepted that offer, the release Farmers drafted and Last signed did not effectuate that agreement. That is some evidence of a unilateral mistake that was converted by Last's knowledge into a mutual mistake. *See Davis*, 750 S.W.2d at 768. However, the evidence does not conclusively show that there was a mutual mistake because it does not conclusively show the nature of the agreement, if any, or Last's knowledge. There is some evidence that the omission of Appellant's name from the release was a clerical error capable of simple correction to accord with the parties' agreement, but the evidence does not conclusively establish the terms of the parties' agreement.

We sustain Appellant's issues to the extent that there is error in the granting of Last's motions for no-evidence and traditional summary judgment. We overrule Appellant's issues to

12

the extent Appellant urges that his motion for summary judgment should have been and should now be granted.

## CONCLUSION

Having concluded that the record contains evidence showing a genuine issue of material fact on essential issues of Appellant's counterclaim, we conclude that neither party is entitled to judgment as a matter of law. We reverse the judgment of the trial court and remand for further proceedings.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Smith

Reversed and Remanded

Filed:   July 12, 2024

13